435 S.E.2d 1

DANIEL B., An Infant, Who Sues By His Next Friend, RICHARD B., and Richard B. and Jenny B., His Parents, Individually, Plaintiffs Below, Appellees,

v.

Terry C. ACKERMAN, Defendant Below, Appellant.

No. 21489.

Supreme Court of Appeals of West Virginia.

Submitted June 1, 1993.

Decided July 16, 1993.

John B. Garden, Rhonda L. Wade, and Jeffrey A. Grove, Bachmann, Hess, Bachmann & Garden, Wheeling, for appellant.

Jacob M. Robinson, Wheeling, for appellees.

PER CURIAM:

This is an appeal by Terry C. Ackerman from a June 5, 1992, order of the Circuit Court of Ohio County which set aside a defense verdict in favor of the Appellant and granted the Appellees a new trial. The Appellant contends that the lower court's decision to grant a new trial was in error. We agree, and accordingly reverse the decision of the circuit court and reinstate the original jury verdict.

## I.

This action was initiated by the Appellees, Daniel B., an infant, suing by his next friend, Richard B., and Richard B. and Jenny B., individually, subsequent to an accident which occurred on November 4, 1984.[1] Daniel B., then nine years of age, was injured when he was struck by the side of the Appellant's vehicle on Eoff Street in Wheeling, West Virginia. The Appellees' civil action alleged that the Appellant had negligently operated her motor vehicle and sought recovery for Daniel's personal injuries and medical expenses. The Appellant denied negligence.

On March 30, 1990, subsequent to a four-day trial, the jury returned a verdict in favor of the Appellant, finding that negligence had not been proven by preponderance of the evidence. The Appellees filed a motion for a new trial, and the verdict was set aside on March 11, 1991, upon the following three grounds: (1) prejudicial remarks made by the Appellant during a jury viewing of the accident scene; (2) improper references to insurance made by the Appellant during direct examination; and (3) improper admission of Daniel B.'s hospital record containing

---

1. As has been our practice in the past, we refrain from using the full name of the infant child or his family. *See, e.g., Nancy Viola R. v. Randolph W.,* 177 W.Va. 710, 356 S.E.2d 464 (1987).

prejudicial hearsay which was unsupported by a witness. The Appellant contends that the alleged errors did not deprive the Appellees of a fair trial and that they did not form a legitimate basis for the granting of a new trial.

## II.

During a jury view of the accident scene, the jurors were permitted to stand on a porch where one of the Appellees' witnesses claimed to have observed the accident. The Appellant allegedly commented to her counsel's paralegal that it was impossible to see the accident scene from that vantage point because trees and a van would have blocked the witnesses' vision. Subsequent to the jury view, counsel for the Appellees advised the court in chambers as follows:

While we were at the view, I overheard the defendant, Ms. Ackerman, comment to the paralegal, Brenda Gittings, I believe her name is, that works for Mr. Garden that it was impossible to see the porch where Dottie Jaeger was positioned at the time of the collision or to see the boy from the porch from Lane 22 because the trees and the van blocked vision. It was within hearing of the jurors. I can't say that any of the jurors heard it.

At this point in time I would, simply, ask that Ms. Ackerman be instructed on proper procedure, that she not make comments in front of jurors, and I will, likewise, advise the plaintiffs of that. I don't know how else to treat that.

Counsel for the Appellees neither sought a mistrial nor made any formal objection, and the issue was not raised again until the Appellees filed their post-trial motions.

Dottie Jaeger, the witness for the Appellees who allegedly observed the collision from the porch, testified at trial regarding her recollection of the accident and the position from which she allegedly saw the accident. Mrs. Jaeger testified that she had known the Appellees for approximately five years and had visited their house on several occasions. She also explained that she had not told the police that she had witnessed the accident when they first arrived on the scene.

Furthermore, she testified that she had first met with the Appellees' counsel and discussed her recollection of the accident on the Friday prior to trial.

■ We have consistently maintained that failure to make a timely objection seriously impairs the right to subsequently raise the objection. In syllabus point 5 of *State v. Davis*, 180 W.Va. 357, 376 S.E.2d 563 (1988), we explained:

" 'Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court.' Point 6, Syllabus, *Yuncke v. Welker*, 128 W.Va. 299 [36 S.E.2d 410 (1945)]." Syllabus point 7, *State v. Cirullo*, 142 W.Va. 56, 93 S.E.2d 526 (1956).

■ Despite the failure of the Appellees' counsel to object or seek a mistrial, the lower court determined that the Appellees were entitled to a new trial because of "the remarks made by Defendant [Appellant] at the view of the scene of the accident. These were highly prejudicial." However, the Appellees' counsel did not formally object to the comment during the jury view, and there was no evidence to indicate that any juror had actually heard the remark. Furthermore, the lower court specifically instructed the jury to consider only the evidence introduced at trial. Absent evidence that any juror actually heard the remark or was prejudiced by it in some fashion, we fail to discern any harm in the remark and conclude that the lower court erred by relying upon this remark as a basis for its decision to award a new trial.

## III.

The lower court also based its award of a new trial upon the Appellant's alleged improper reference to insurance during her direct examination. The Appellant, a registered nurse, was questioned during her direct examination regarding admission procedures in an emergency room. The testimony proceeded as follows:

Q: Are you familiar and were you familiar in 1984 with what the protocol was about the taking of a history of a patient who presented themselves to the Emergency Room?

A: Well, I can only tell you from my own, personal experience as far as—my son broke his arm when he was two years old.

They take them in, and if they're immediately in danger, then they will take care of the child first, and then later on you have to go through insurance people and give them all of the insurance and everything. You also have to give them a brief summary of what happened to the child.

This reference by the Appellant to insurance was the only mention of insurance in the presence of the jury at any time during the trial.

Subsequent to that comment and the request of Appellees' counsel to approach the bench, the lower court ordered a conference in chambers. Counsel for the Appellees made the following statement:

The introduction into this case of insurance information, health insurance, or whatever type of insurance she was alluding to, I think prejudices the plaintiffs' case to a substantial degree. I would move for some type of an appropriate remedial action or, in the alternative, a mistrial with the cost to be borne by the defense.

The lower court denied the motion for a mistrial, reasoning that the mention of insurance was inadvertent. At the close of the evidence, the Appellees renewed their motion for a mistrial, and that motion was again denied.

■ We have previously explained that not every mention of insurance during trial constitutes reversible error. *Ratlief v. Yokum,* 167 W.Va. 779, 280 S.E.2d 584 (1981). In *Ratlief,* a plaintiff indicated during direct examination that he had medical insurance. On cross-examination, it was disclosed that eighty percent of his medical bills had been paid by insurance. After addressing the mentioning of insurance during trial, we concluded that any error in the admission of testimony regarding insurance was harmless since the jury found in favor of the defendant on the issue of liability. *Id.* at 787, 280 S.E.2d at 590. In syllabus point 8 of *Ratlief,* we explained that "[t]he collateral source rule also ordinarily prohibits inquiry as to whether the plaintiff has received payments from collateral sources. This is based upon the theory that the jury may well reduce the damages based on the amounts that the plaintiff has been shown to have received from collateral sources." In other words, the rule has its foundations in the concern that a jury may inaccurately or unfairly determine the amount of *damages* to which a plaintiff is entitled. As we recognized in *Ratlief,* however, when the case is resolved on the issue of liability, reference to insurance is not dispositive of the issue of harm. "The reason the error is harmless in this case is that the jury did not reach the damage issue but disposed of the case against the plaintiff on the liability issue." *Id.* at 787, 280 S.E.2d at 590.

■ Similarly, the jury in the present case based its determination on the issue of liability. Because the jury found in favor of Appellant on the issue of liability, the reference to insurance had no impact on any damages the jury might have awarded had it reached the issue of damages. Moreover, the Appellant's statement regarding insurance was generic in nature and was unrelated to any inquiry regarding her personal insurance coverage. She was simply describing the procedures typically employed in an emergency room setting. We agree with the lower court's conclusion that the Appellant's reference to insurance was inadvertent, that it did not prejudice the Appellees in any manner, and that it was indeed harmless.

## IV.

In granting the Appellees a new trial, the lower court also relied upon an alleged improper admission of defendant's Exhibit 7, which contained a reference indicating that Daniel B. had been "running" into the street. The manner in which Daniel B. entered the

street had become an issue of contention in this civil action. During the cross-examination of Daniel B.'s father, the Appellant introduced, without objection, an emergency/trauma record from Emergency Medical Services at Ohio Valley Medical Center. That record, introduced as defendant's Exhibit No. 1, noted that a nine-year-old was "hit by a car while he was running across the road." The Appellant also introduced Exhibit No. 7, a portion of the hospital chart known as the "run record" documenting the transportation of Daniel to the Ohio Valley Medical Center. That record noted: "Pt [patient] running across street and struck via automobile."

The Appellees initially objected to the introduction of the "run record," despite the fact that it was part of the Emergency Room record, on the ground that they had not previously examined the exhibit and had no knowledge of how the statement was obtained. When the "run record" was eventually admitted into evidence as Defendant's Exhibit No. 7, however, it was admitted during the direct examination of the Appellant, without objection. Nonetheless, the lower court cited the admission of Defendant's Exhibit 7 as a ground for his award of new trial, explaining as follows: "No witness was called to support the same and it contained hearsay of a prejudicial nature." The Appellees neither objected to Defendant's Exhibit No. 7 at the time of its admission nor raised its admission as error in either of their post-trial motions. The issue was eventually addressed in their memorandum in support of the post-trial motions; however, that memorandum was not filed until more than four months after trial.[2]

■ The issues of lack of objection and delay in bringing the alleged error to the attention of the court are secondary to the principal issue of concern; even the substance of the argument is of questionable merit. Rule 803(6) of the West Virginia

Rules of Evidence provides that the following documents are admissible into evidence:

*Records of Regularly Conducted Activity.*—A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The "run report" qualifies as a report or record made at or near the time in question kept in the course of regular activity. Such a report is generated by the emergency medical team and/or paramedic in the ambulance each time an individual is transported to the hospital.

■ We have previously recognized the admissibility of medical records under the hearsay exception contained in Rule 803(6). *Tedesco v. Weirton General Hosp.*, 160 W.Va. 466, 235 S.E.2d 463 (1977). We have noted, however, that such "records may be admissible as records kept in ordinary course of business if verified by their custodian or supervisor." *State v. Bias*, 171 W.Va. 687, 692, n. 4, 301 S.E.2d 776, 782, n. 4 (1983). The "run report" in question, while technically an ambulance record, was also part of the emergency room record. No authentication was offered for this document. Proper authentication would have required testimony by either a custodian of the records or an otherwise qualified witness. *United States v. Porter*, 821 F.2d 968 (4th Cir.1987), *cert. denied* 485 U.S. 934, 108 S.Ct. 1108, 99

---

2. The submission of that memorandum more than four months after trial was well beyond the ten-day limitation set forth in Rule 59 of the West

Virginia Rules of Civil Procedure. Our findings on this issue, however, are based upon the substantive issue rather than upon that delay.

**6**

L.Ed.2d 269 (1988); *State v. Fairchild,* 171 W.Va. 137, 298 S.E.2d 110 (1982). In syllabus point 4 of *Fairchild,* we explained: "Records made routinely in the regular course of business, at the time of the transaction or occurrence, or within a reasonable time thereafter, are generally considered trustworthy and reliable, and therefore ought to be admissible when properly verified." *See also Hill v. Joseph T. Ryerson & Son, Inc.,* 165 W.Va. 22, 268 S.E.2d 296 (1980). The trustworthiness must be established, however, by testimony of a custodial or supervisory official demonstrating the regularity of the notation practice as an established procedure. *Fairchild,* 171 W.Va. at 147, 298 S.E.2d at 120. "However, in no instance may records of this kind prove themselves." *Id.* at 147, 298 S.E.2d at 120.

█ In the present case, no objection was offered at the time the record was introduced. Moreover, no evidence of lack of trustworthiness or prejudice to the Appellees has been identified. We therefore hold that any error in admitting the record without proper authentication was harmless,[3] and the admission of the record should not have been employed by the lower court as a justification for the award of a new trial.

The jury in this matter, subsequent to a four-day trial, found that negligence had not been proven by a preponderance of the evidence. In granting the Appellees' motion to set aside that verdict, the lower court cited the three grounds examined above. Having reviewed those alleged errors and the justification they allegedly provided for a new trial, we find that the lower court erred by basing its determination upon such purported errors. We therefore reverse the judgment of the lower court and reinstate the jury verdict in favor of the Appellant.

Reversed.

---

3. The lower court permitted the Appellees to question the Appellant regarding the source of the information contained in the "run record," and counsel for the Appellees emphasized the alleged reliability problem to the jury.