566 S.E.2d 274

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Michael MARTISKO, Defendant Below, Appellant.**

No. 30044.

Supreme Court of Appeals of West Virginia.

Submitted May 1, 2002.

Decided June 17, 2002.

---

Darrell V. McGraw, Jr., Esq., Attorney General, Heather D. Foster, Esq., Assistant Attorney General, Charleston, for Appellees.

Jack Wood, Esq., Public Defender Corporation, Charleston, for Appellant.

## PER CURIAM.

Appellant and defendant below Michael Martisko challenges his misdemeanor convictions of domestic battery and obstruction for an altercation with his then-girlfriend and with police who responded to the scene. A magistrate court jury convicted appellant of these two charges and the Circuit Court of Ohio County affirmed. On appeal, Mr. Martisko alleges, *inter alia*, that the circuit court erred in affirming his conviction when the magistrate had erred below in excluding certain evidence Mr. Martisko had sought to introduce to impeach the credibility of the victim, who had not appeared to testify. Because we find that the magistrate court, and subsequently the circuit court, improperly denied Mr. Martisko an opportunity to impeach the victim/witness, we reverse the conviction for domestic battery.

## I.

## BACKGROUND

On the afternoon of October 9, 1999, Wheeling police responded to a report of an altercation in progress. Two officers arrived at the reported address and were met by one Rayla Garrison, a friend or neighbor of the victim. Ms. Garrison urged the officer to enter the residence because a man and woman were upstairs fighting. Upon entering the residence by the rear stairs, the officers observed Michael Martisko and Madylyn Madden in the front room of the apartment. Ms. Madden was bleeding from a split lip and had blood on her face. The officers later reported that upon their entry into the front room of the apartment, a crying, bleeding Ms. Madden stated, "He hit me," or words to that effect. However, the officers at no time actually saw Mr. Martisko strike Ms. Madden.

The officers cuffed Mr. Martisko without incident, but as they attempted to remove him from the home he began to struggle. In the ensuing fray, a kicking and squirming Martisko and a police officer rolled down a flight of twelve steps. That officer, and at least one other, reported being injured in the scuffle. Subsequently, Mr. Martisko was charged with battery, domestic battery, battery of a police officer and obstruction of a police officer.

At trial in magistrate court, the state called four police officers as witnesses. The state, as well as the defense, attempted to call the victim, Ms. Madden, and the neighbor Ms. Garrison, but neither appeared. To meet its burden of proof, the state witnesses were asked what the victim had told them of the events of that afternoon. Over defense objection, the officers testified that Ms. Madden stated, "He hit me," or words to that effect, as the officers entered the room. The officers also testified that Ms. Madden was bleeding from the mouth, had blood on her face, had a contusion on her knee, and was shaken and crying. The magistrate also allowed the officers to testify over defense objection that after Mr. Martisko's arrest Ms. Madden again stated that Mr. Martisko had hit her, and kicked her, and that Ms.

Garrison had reported being hit and kicked by Mr. Martisko. All of this testimony was allowed under the "excited utterance" exception contained in Rule 803 of the West Virginia Rules of Evidence.

Later in the trial, defense counsel attempted to impeach the credibility of the absent Ms. Madden by introducing into evidence a certain document or documents that purportedly showed that Ms. Madden had herself been convicted of domestic battery after an incident with an erstwhile boyfriend, and that Ms. Madden had filed similar charges against that boyfriend, but had later recanted, causing the charges against the boyfriend to be dropped. The magistrate refused to accept the document or documents into evidence.

The jury found Mr. Martisko guilty of only two of the four charges, domestic battery and obstruction. A magistrate later sentenced Mr. Martisko to one year in jail for each charge, to run concurrently, plus a fine and costs. Mr. Martisko appealed to the Circuit Court of Ohio County, which affirmed his convictions. Now before this Court, appellant alleges a variety of errors. Because we feel that Mr. Martisko should have had an opportunity to impeach the victim, we reverse his conviction for domestic battery.

## II.

### STANDARD OF REVIEW

We have observed in other cases that our standard of review in an evidentiary dispute such as this depends upon the specific actions of a lower court:

> To the extent the trial court's admission of evidence was based upon an interpretation of a statute or West Virginia Rule of Evidence, our standard of review is plenary. *State v. Omechinski*, 196 W.Va. 41, 45, 468 S.E.2d 173, 177 (1996); *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995). Our review of a trial court's ruling to admit or exclude evidence if premised on a permissible view of the law, however, is only for an abuse of discretion. *Id.*

*State v. Crabtree*, 198 W.Va. 620, 626, 482 S.E.2d 605, 611 (1996). Or in other words, when merely applying our existing law: "A trial court's evidentiary rulings, as well as its

application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998). However, we have also stated:

> While ordinarily rulings on the admissibility of evidence are largely within the trial judge's sound discretion, a trial judge may not make an evidentiary ruling which deprives a criminal defendant of certain rights, such as the right to examine witnesses against him or her, to offer testimony in support of his or her defense, and to be represented by counsel, which are essential for a fair trial pursuant to the due process clause found in the Fourteenth Amendment of the Constitution of the United States and article III, § 14 of the West Virginia Constitution.

Syl. pt. 3, *State v. Jenkins*, 195 W.Va. 620, 466 S.E.2d 471 (1995).

## III.

### DISCUSSION

#### A. *Hearsay Testimony*

Appellant argues that he should have been allowed to introduce certain documents into evidence in an effort to impeach the testimony of Ms. Madden, whose out-of-court statements were admitted under the excited utterance exception to the hearsay rule. As we have observed in the past, our Constitution demands that an accused be able to face his accusers:

> The Confrontation Clause contained in the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall . . . be confronted with the witnesses against him." This clause was made applicable to the states through the Fourteenth Amendment to the United States Constitution.

Syl. pt. 1, *State v. James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990). And because of this requirement, the law favors live testimony:

> [A]s the Supreme Court explained in [*Ohio v.*] *Roberts*, [448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)] "the Confrontation Clause reflects a preference for face-to-

face confrontation at trial." 448 U.S. at 63, 100 S.Ct. 2531. As the United States Supreme Court articulated in *Mattox v. United States,* 156·U.S. 237, 15 S.Ct. 337,·39 L.Ed. 409 (1895), the Confrontation Clause envisions:

a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Id.* at 242–43, 15 S.Ct. 337.

*State v. Kennedy,* 205 W.Va. 224, 517 S.E.2d 457 (1999). The Supreme Court has explained that "[t]he preference for live testimony in the case of statements like those offered in *Roberts* is because of the importance of cross-examination, 'the greatest legal engine ever invented for the discovery of the truth.'" *White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (quoting *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)).

■■■■ However, it is equally clear that live testimony is not always possible and so our law has made room for the introduction of out-of-court statements. Speaking of the Confrontation Clause, this Court has observed: "This provision creates a strong preference for live testimony; however, admission of reliable out-of-court statements are not categorically prohibited." *State v. James Edward S.,* 184 W.Va. 408, 411, 400 S.E.2d 843, 846 (1990). The kinds of out-of-court statements that may be used, and the proper methods of introducing such statements, are described by the Rules of Evidence, and the case law that has interpreted them. As all courtroom practitioners know:

Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

Syl. pt. 1, *State v. Maynard,* 183 W.Va. 1, 393 S.E.2d 221 (1990). In the instant case, the victim and her friend or neighbor Ms. Garrison were the only eyewitnesses to the alleged domestic battery. Their statements to the police were admitted under the "excited utterance" exception to the hearsay rule, which describes the term to mean: "Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 803(2), W. Va. R. Evid. We have explained under what circumstances a statement will qualify for admission under this rule:

In order to qualify as an excited utterance under W.Va.R.Evid. 803(2):(1) the declarant must have experienced a startling event or condition; (2) the declarant must have reacted while under the stress or excitement of that event and not from reflection and fabrication; and (3) the statement must relate to the startling event or condition.

Syl. pt. 7, *State v. Sutphin,* 195 W.Va. 551, 466 S.E.2d 402 (1995).[1]

---

1. At trial, defense counsel suggested that the comments made by Ms. Madden did not qualify as an excited utterance. We disagree. In a case with similar facts, we found the statements made by a battery victim did qualify as excited utterances.

The testimony before the judge was that Ms. M. had a broken nose, profuse bleeding from the nose, and an eye that was swollen shut. The photographs of Ms. M. strongly suggested that she had received a severe beating. There is no doubt that such a beating and such injuries are a "startling event."

· Officer Schultz testified that he arrived at the scene of the alleged beating "within two minutes" of having received notification from dispatch. He testified that "less than ten minutes" had elapsed between the time that he had arrived at the scene and the time he encountered Ms. M. Upon encountering her, he noted that she was "upset [and] crying," that she was "bleeding from the nose quite heavily," and that the blood that he observed about her was "fresh." Officer LaCava similarly testified that, upon encountering Ms. M., he observed that she was "bleeding from the nose

■ But while the law allows such out-of-court statements to be admitted into evidence, it also allows an opponent of such a statement an opportunity to counter that statement, in the same manner as if the speaker had been present in the courtroom:

Under Rule 806 of the Rules of Evidence, the credibility of the declarant of a hearsay statement may be attacked by any evidence which would be admissible for that purpose if the declarant had testified as a witness.

*State v. Crabtree,* 198 W.Va. 620, 626, 482 S.E.2d 605, 611 (1996). The rule acknowledges the fact that, for the most part, an out-of-court declarant will be treated as though he or she were present and testifying in the courtroom.[2]

In order to find guidance on just how one may attack the credibility of an out-of-court declarant, one must turn to the Rules of Evidence relating to witnesses and their testimony. Counsel for the appellee, well versed in the nuances of the Rules of Evidence, argues that in this particular case the exclusion of the proffered evidence was not error, because limitations in the Rules would not have permitted its introduction under any circumstances. Appellee points out that the crime of which Ms. Madden was convicted previously, domestic battery, does not appear to fit within the confines of Rule 609, which states in pertinent part:

For the purpose of attacking the credibility of a witness other than the accused ... (A) evidence that the witness has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year ... [or] (B) evidence that the

witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment ....

Rule 609, W. Va. R. Evid.

■ However, Mr. Martisko might have had more luck making use of his evidence under another rule. If Mr. Martisko wished to use not only the conviction, but the documents that showed that Ms. Madden made, and then recanted, very similar accusations against an old boyfriend, then he also could have tried to get them in under Rule 608, which allows an opponent to introduce evidence of specific instances of conduct:

(b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of a witness other than the accused (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Rule 608, W. Va. R. Evid.

As counsel for the state ably points out, although 608(b) appears to be Mr. Martisko's best avenue for introducing his evidence, Rule 608(b) on its face prohibits the introduction of any extrinsic evidence to prove the specific incidence (in this case recanting simi-

---

and mouth area." Significantly, Schultz testified that Ms. M.'s eye was noticeably swelling shut in his presence. Ms. M.'s statements to the police at her residence were clearly made while she continued to experience excitement over the startling event.
*State v. Harris,* 207 W.Va. 275, 279, 531 S.E.2d 340, 344 (2000).

2. The full text of the rule reads:
RULE 806. ATTACKING AND SUPPORTING CREDIBILITY OF DECLARANT
When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E) has been admitted in evidence, the credibility of

the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his or her hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.
Rule 806, W. Va. R. Evid.

lar allegations) that one wishes to use to attack the declarant's credibility.

However, as pointed out by defense counsel, this illustrates a confusing contradiction in the Rules. Rule 806 allows one to attack the credibility of an out-of-court declarant as if he or she were present. But Rule 608 only allows inquiring into specific instances of conduct on cross-examination. Obviously, if Rule 806 applies, there has been no live testimony, thus there cannot be any cross-examination.

We are not the first court to wrestle with this seeming Catch–22. There appears to be a split of authority among the federal courts. The United States Court of Appeals for the Second Circuit commented on the same issue in *United States v. Friedman*, 854 F.2d 535 (2d Cir.1988). The case concerned widespread corruption and racketeering in New York City's government. The court allowed into evidence certain out-of-court statements of an unindicted "co-racketeer" named Manes. Defendant Friedman wanted to attack the credibility of Manes, who had not testified, by entering evidence that Manes had attempted suicide, and then fabricated an abduction story to cover it up. The appeals court held that the trial court properly excluded the impeachment evidence because that evidence was not probative of the truthfulness of the hearsay at issue. However, in a footnote the court suggested that the evidence, had it been probative, would have been admissible.

> That rule [Rule 608(b)] limits such evidence of "specific instances" to cross-examination. Rule 806 applies, of course, when the declarant has not testified and there has by definition been no cross-examination, and resort to extrinsic evidence may be the only means of presenting such evidence to the jury.

*Id.* at 570 n. 8.

However, opinions from two other circuits suggest otherwise. In *United States v. White*, 116 F.3d 903 (D.C.Cir.1997), the de-

fendant sought to undermine the credibility of a deceased declarant, whose hearsay testimony came into evidence through a testifying police officer. The lower court had allowed the defendant to inquire about the declarant's drug use and prior convictions. The defendant also wanted to ask if the declarant had ever lied on a job application or disobeyed a court order, but the lower court did not permit these questions. The District of Columbia Circuit found that these questions should have been allowed, but noted that extrinsic evidence in support of these allegations would not have been allowed.

> Accordingly, [defense] counsel could have asked Sergeant Sutherland only if Williams [the deceased declarant] had ever lied on an employment form or violated any court orders, and could not have made reference to any extrinsic proof of those acts.

*Id.* at 920. It is worth noting, however, that the court may have taken a dim view of the defendant's hearsay objections because the declarant was only unavailable due to the fact that the defendant had shot him sixteen times.[3]

The Third Circuit has agreed with the D.C. Circuit. In *United States v. Saada*, 212 F.3d 210 (3rd Cir.2000), a case involving a false insurance claim, it was the government that wished to attack the credibility of a deceased declarant, and the lower court allowed this by taking judicial notice of prior misconduct of the deceased declarant. As the appeals court explained, the tension between the two rules was the basis of the decision below:

> In this case, the District Court implicitly interpreted Rule 806 to modify Rule 608(b)'s ban on the introduction of extrinsic evidence in the context of a hearsay declarant. Accordingly, we must determine whether that interpretation is permissible to ascertain whether the District Court's admission of the evidence should be reviewed for an abuse of discretion.

---

**3.** The court noted:
> It is hard to imagine a form of misconduct more extreme than the murder of a potential witness. . . . [W]here a defendant has silenced a witness through the use of threats, violence or

murder, admission of the victim's prior statements at least partially offsets the perpetrator's rewards for his misconduct.
*Id.* at 911.

*Id.* at 220. After examining the D.C. Circuit's decision in *White*, the Third Circuit found that the lower court had erred:

> We agree with the approach taken by the court in *White*, and conclude that Rule 806 does not modify Rule 608(b)'s ban on extrinsic evidence of prior bad acts in the context of hearsay declarants, even when those declarants are unavailable to testify.

*Id.* at 221. Thus it is clear to us that Mr. Martisko is not alone in arguing that the two rules do not fit together flawlessly.

Commentators have noted the unfairness inherent in the view that all extrinsic evidence is prohibited:

> If the attacking party cannot impeach the declarant with specific instances of conduct, she is clearly worse off than she would have been if her opponent had called the declarant to testify. Unless she is able (and willing) to call the declarant as her own witness, she now has no way of bringing to the jury's attention damaging evidence of the declarant's untruthful conduct. Instead, the attacking party will be limited to using opinion or reputation evidence about the declarant's character for untruthfulness, which is often significantly less effective than evidence of specific instances of conduct.

Margaret Meriwether Cordray, *Evidence Rule 806 and the Problem of Impeaching the Nontestifying Declarant*, 56 Ohio St. L.J. 495, 525 (1995). Indeed, Professor Cordray has gone so far as to suggest that the text of Rule 806 should be changed to allow a court discretion to permit extrinsic evidence to impeach a non-testifying declarant.[4]

Appellant urges us to consider such a change ourselves. However, in light of the disagreement among the federal appellate circuits, we are not prepared to craft a new rule in this opinion, nor do we feel that any adjustment of the Rules is necessary to decide the instant case.

In the instant case, a variety of factors combined to deprive Mr. Martisko of a fair opportunity to rebut the hearsay testimony offered against him. It is unclear at what point it became apparent to defense counsel that neither the victim, Ms. Madden, nor the friend/neighbor, Ms. Garrison, would be present to testify; he may not have learned this until the other witnesses had already been released. The magistrate's exclusion of the proffered impeachment effort left Mr. Martisko with few options. In short, without any witness to the alleged domestic battery present in court, there was little Mr. Martisko could do to defend himself.

■ We are uncomfortable with a conviction[5] based entirely upon hearsay evidence where the defendant has had no opportunity to impeach his chief accuser. In light of the law's strong preference for live testimony as we noted in *State v. James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990), also noted by the U.S. Supreme Court in *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), and in light of the confusing tension between Rules 806 and 608, we feel that under the facts of this case, Mr. Martisko should have been permitted to impeach the credibility of Ms. Madden either by introducing the documents in question or

---

**4.** Rule 806 thus should be amended to provide the trial court with discretion to allow the use of extrinsic evidence to impeach a nontestifying declarant with specific instances of conduct pursuant to Rule 608(b). A proposed amendment to the text of Rule 806 follows:

> When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. *If the declarant does not testify, the court may, in its discretion, permit the use of extrinsic evidence to prove specific instances of conduct that are probative of truthfulness or untruthfulness, as*

*provided in Rule 608(b), as a means of attacking or supporting the credibility of the declarant.* Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

*Id.* at 530–31 (emphasis added).

**5.** We refer here to the domestic battery conviction. The state did offer eyewitness testimony for the obstruction charge.

by re-calling the police witnesses and questioning them about their knowledge of Ms. Madden's prior acts. Accordingly, we reverse and grant Mr. Martisko a new trial on the charge of domestic battery.

### B. *Joinder of Charges*

■ Mr. Martisko also assigned as error the magistrate's decision to join the four charges into one trial, and that, therefore, his conviction for obstruction should also be overturned. He directs us generally to *State v. Ludwick*, 197 W.Va. 70, 475 S.E.2d 70 (1996) (per curiam), in which we reversed a lower court's refusal to consider a defendant's motion to sever charges of driving on a revoked license and driving under the influence. In another case, *State v. Milburn*, 204 W.Va. 203, 511 S.E.2d 828 (1998), a defendant convicted of murder and arson made a similar argument, and also directed the Court to *Ludwick*. In *Milburn*, the Court found that the charges against the defendant were closely related enough to make joinder proper.

> Appellant essentially argues that all three kinds of prejudice discussed in *Ludwick* occurred in her case. We disagree. Upon review of the record, we find that the circuit court thoroughly considered the appellant's arguments, but concluded that the offenses she was charged with were all part of a common scheme or plan, thereby making joinder proper....
> Based on these facts, the circuit court determined that even if the charges were severed, it was likely that the evidence relating to the murder would be admissible during the trial on the arson and providing false information charges. Likewise, the arson evidence would be admissible during the murder trial.

*State v. Milburn*, 204 W.Va. 203, 208, 511 S.E.2d 828, 833 (1998).

In *Milburn*, the Court went on to discuss another case where a defendant was charged with aggravated robbery and assault in the same proceeding that he was charged for obstruction of a police officer and stealing a police car, even though the robbery/assault took place a week before the obstruction/car theft. Even though a week passed between the events, the Court concluded that joinder of those charges was proper:

> In reviewing federal authority relating to severance of multiple counts, this Court notes that it is widely recognized that prejudice is not present under the "other crimes" rule if evidence of each of the crimes charged would be admissible in a separate trial for the other. See C.A. Wright, Federal Practice and Procedure: Criminal 2d § 222 (1982).
>
> This Court believes that in the present case the evidence of the defendant's obstruction of a police office and unauthorized taking of the police vehicle would have been admissible on the robbery count as flight evidence. See, e.g., *State v. Meade*, 196 W.Va. 551, 474 S.E.2d 481 (1996). Likewise, the evidence of the aggravated robbery would have been admissible to show the defendant's motive in taking the police cruiser, as well as his motive in obstructing a police officer.
>
> Having concluded that the evidence of the crimes contained in Counts I and II would have been admissible during the trial of Counts III and IV, and that the evidence of the crimes contained in Counts III and IV would have been admissible in the trial of Counts I and II, and believing that the federal courts have correctly concluded that it is not prejudicial for a trial court to deny severance of various counts under the "other crimes" rule if evidence of each of the crimes charged would have been admissible in a separate trial for the other, this Court cannot conclude that the trial court in the present case abused its sound discretion in refusing to grant the defendant the severance which he sought.

*State v. Penwell*, 199 W.Va. 111, 118, 483 S.E.2d 240, 247 (1996). We come to the same conclusion in this case. The charges relating to the scuffle with the police happened moments after the alleged battery and domestic battery, and evidence of each charge would likely be admissible in a trial of one of the other charges. Thus, we find that the magistrate court did not err when it

joined the charges against Mr. Martisko into one proceeding.[6]

## IV.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Ohio County as to appellant's conviction for domestic battery is reversed and remanded for further proceedings consistent with this opinion.

Affirmed, in part, reversed, in part, and remanded.

---

**6.** Mr. Martisko also argues that the state failed to produce exculpatory evidence, in this case, the information related to Ms. Madden's prior conviction. He moved for dismissal on that basis, and the magistrate denied his motion. Mr. Martisko argues that the magistrate erred in refusing to dismiss, and on this basis both his convictions should be reversed. We note that the state maintains that the information had been present in the file, and that Martisko actually possessed the information prior to trial. We agree with the state that the magistrate's refusal to dismiss did not constitute reversible error.