591 S.E.2d 120

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Sheila Jean BROOKS, Defendant Below, Appellant.**

**No. 31158.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 2003.

Decided Nov. 14, 2003.

Dissenting in part, and concurring in part Opinion of Justice Maynard Dec. 8, 2003.

Maynard, J., dissented in part, concurred in part, and filed opinion.

Thomas J. Gillooly, Esq., Charleston, for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Jon R. Blevins, Esq., Assistant Attorney General, Charleston, for Appellee.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Mercer County entered on January 23, 2002. In that order, the court sentenced the appellant and defendant below, Sheila Jean Brooks,[1] to one year imprisonment and imposed a fine of $500.00 for her conviction of misdemeanor battery. However, the court also suspended the appellant's sentence and placed her on probation for three years with six months of home confinement. The court further ordered the appellant to perform 450 hours of community service.

In this appeal, the appellant contends that the trial court erred by refusing to give the jury her self-defense instruction. She also asserts that the trial court erred by refusing to admit certain evidence at trial. This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is affirmed.

## I.

### FACTS

The appellant was indicted on February 14, 2001, and charged with burglary and malicious assault by "striking Sharlene McCoy on the head with a crowbar." Subsequently, the burglary charge was dismissed, and the indictment was amended to charge the appellant with malicious assault by "causing serious bodily injury to Sharlene McCoy by biting her arm and index finger." The

---

1. The appellant is a doctor of podiatric medicine.

indictment arose out of events that occurred on December 16, 2000.

Around 5:00 a.m. on the day of the alleged offense, the appellant went to a house occupied by Sharlene McCoy and Katherine Barker in Bluefield, West Virginia.[2] Ms. Barker had previously lived with the appellant, and the appellant says that she went to the house to persuade Ms. Barker to return home with her. When she arrived at the house, the appellant stood in the yard yelling and pleading for Ms. Barker to come home. After receiving no response, the appellant left. She returned twenty minutes later and again yelled for Ms. Barker and put some of her possessions in the yard.[3] This time, Ms. Barker told the appellant to leave and threatened to call the police if she did not do so. The appellant left but returned around 7:00 a.m.

When the appellant came back to the house for the third time, she was carrying a crowbar and a crescent wrench. She proceeded to enter the house and go upstairs where she confronted Ms. Barker and Ms. McCoy. A fight and struggle ensued, which ended with Ms. McCoy subduing the appellant, and Ms. Barker phoning the police.

At trial, Ms. Barker and Ms. McCoy testified that the appellant first attacked Ms. Barker with the crowbar, striking her in the elbow as she jumped from her bed. Ms. McCoy said the appellant then turned to her, brandished the crowbar, and said, "Do you f——ing want some of this?" Ms. McCoy said that she then "engaged" the appellant in order to defend herself and a struggle ensued. She wrestled the crowbar from the appellant, threw it aside, and sat on the appellant's back to hold her down. However, according to Ms. McCoy, the appellant then produced the crescent wrench and continued to try to attack her. During the struggle, the appellant bit Ms. McCoy's index finger

and forearm. The appellant suffered a broken nose.

In contrast, the appellant testified at trial that she was concerned about her friend, Ms. Barker, and went to the house to "rescue" her. With regard to the struggle with Ms. McCoy, the appellant testified that she did not remember who hit whom first. She stated:

> All I remember is being spun around and pinned down on the floor with the crowbar. I couldn't breath[e]. She was choking me. I think at that particular time I got a hold of her arm and bit it.

The appellant maintained that her actions were in self-defense.

Following a two-day jury trial, the appellant was found guilty of misdemeanor battery. As noted above, the circuit court sentenced the appellant to one year imprisonment and imposed a fine of $500.00, but then suspended the sentence and placed the appellant on probation for three years with six months of home confinement. The court further ordered the appellant to perform 450 hours of community service.[4] Subsequently, the appellant filed this appeal.

## II.

### STANDARD OF REVIEW

As set forth above, the appellant asserts error because the trial court failed to give the jury the self-defense instruction she proposed. "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syllabus Point 1, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996). As we explained in Syllabus Point 4 of *State*

---

**2.** At trial, the evidence indicated that the house was "in the bad part of town" and was uninhabitable. In that regard, the house had no water, no bathroom facilities, or a central heating system. The house did have electricity and a small space heater. Ms. Barker had talked with the owner about restoring the house, and he had given her a key to the premises.

**3.** Ms. McCoy and Ms. Barker testified that the appellant threw Ms. Barker's possessions all over the yard. The appellant maintains that she took some items that Ms. Barker had packed in boxes before she left and stacked them on the porch and in the yard.

**4.** The appellant's sentence was stayed pending this appeal.

*v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995):

> A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

■ The appellant also claims the trial court erred by refusing to allow her to introduce certain evidence at trial. In Syllabus Point 1 of *State v. Martisko,* 211 W.Va. 387, 566 S.E.2d 274 (2002), this Court held that " '[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syl pt. 4, *State v. Rodoussakis,* 204 W.Va. 58, 511 S.E.2d 469 (1998)." Accordingly, with these standards in mind, we will now determine whether the trial court committed reversible error.

### III.

### DISCUSSION

#### A. The Self–Defense Instruction

■ The appellant first contends that the trial court erred by refusing to give the jury her self-defense instruction. As discussed above, the appellant testified at trial that Ms. McCoy seized the crowbar from her and attempted to use it to choke her. The appellant's defense theory was that even if she was viewed as the initial aggressor because she gained entry into the house by force,[5] the situation quickly changed, and Ms. McCoy became the aggressor and she became the

victim. Thus, the appellant claimed that her actions toward Ms. McCoy were merely self-defense. She proposed that the jury be given a self-defense instruction. The State objected.

After consideration, the trial court determined that the jury should be advised of the law regarding self-defense. Accordingly, the court gave the jury instruction proposed by the appellant which is set forth below, but excluded the italicized language.

> One of the questions to be determined by you in this case is whether or not the Defendant acted in self-defense so as to justify her acts. Under the laws of this state, if the Defendant was not the aggressor, and had reasonable grounds to believe and actually did believe that she was in imminent danger of death or serious bodily harm from which she could save herself only by using deadly force against her assailant, then she had the right to employ deadly force in order to defend herself. By deadly force is meant force which is likely to cause death or serious harm.
>
> *You should be cautious in deciding who was the aggressor because a defendant's role may shift from aggressor to victim during the course of an altercation because only reasonable and proportionate force may be used to repel an assault. Where a person assaulted uses disproportionate force to repel an attack, the privilege of self-defense is lost and the person so assaulted is entitled to defend themselves.*
>
> In order for the Defendant to have been justified in the use of deadly force in self-defense, she must not have provoked the assault on her or have been the aggressor. Mere words, without more, do not constitute provocation or aggression. *Mere provocation by words or conduct, no matter how insulting, does not destroy the privilege of self-defense, even though a reasonable woman should realize that the provocation will probably induce the attack. But if the actor actually intends her provocative words or actions to induce an attack, they amount to a challenge to fight,*

5.   Apparently, the appellant threw a cement block into the front door to gain entry into the house.

*and as such, to a consent similar to that given in a case of mutual affray. In the case of a fight or affray by mutual consent, each party gives consent to those blow[s] from which she is unable to protect herself. But each consents to the other using such force as is reasonably necessary to defend herself against her opponent's attack.* The circumstances under which she acted must have been such as to produce in the mind of a reasonable prudent person, similarly situated, the reasonable belief that the other person was then about to kill her to do her serious bodily harm. In addition, the Defendant must have actually believed that she was in imminent danger of death or serious bodily harm and that deadly force must be used to repel it. If evidence of self-defense is present, the State must prove beyond a reasonable doubt that the Defendant did not act in self-defense. If you find that the State has failed to prove beyond a reasonable doubt that the Defendant did not act in self-defense, you must find the defendant not guilty. In other words, if you have a reasonable doubt as to whether or not the Defendant acted in self-defense, your verdict must be not guilty.

The appellant argues that she was entitled to have the jury instructed on her theory of defense and therefore, the court erred by excluding portions of her proposed self-defense instruction. She claims that her proposed instruction is supported by this Court's decisions in *State v. Smith*, 170 W.Va. 654, 295 S.E.2d 820 (1982) and *State v. Wykle*, 208 W.Va. 369, 540 S.E.2d 586 (2000). We disagree.

In *Smith*, this Court found prejudicial error where the jury was instructed that the right of self-defense was lost by merely using "indecent language that would disturb the tranquility enjoyed by the citizenry of the community." 170 W.Va. at 657, 295 S.E.2d at 822. In *Wykle*, this Court determined that the defendant could not claim self-defense for stabbing the unarmed victim nine times with a knife after the victim slapped the defendant's face during an argument. 208 W.Va. at 374, 540 S.E.2d at 591. In both cases, this Court recited the common law

rule that "one who is at fault or who is the physical aggressor can not rely on self-defense." *Smith*, 170 W.Va. at 656, 295 S.E.2d at 822; *Wykle*, 208 W.Va. at 373, 540 S.E.2d at 590. Stated another way, "[t]he general rule is that a person accused of an assault does not lose his right to assert self-defense, unless he said or did something calculated to induce an attack upon himself." Syllabus, *Smith*.

In this case, it is undisputed that the appellant went to the house where Ms. McCoy and Ms. Barker were staying, forced her way through the front door with a cement block, climbed the stairs, and entered the bedroom where Ms. McCoy and Ms. Barker were located brandishing a crowbar. The appellant then struck Ms. Barker on the arm with the crowbar. While the testimony differs as to how the struggle between the appellant and Ms. McCoy began, the record clearly establishes that the appellant was the initial aggressor.

Nonetheless, the appellant argues that she became the victim when Ms. McCoy used force to repel her attack. However, Ms. McCoy obviously had the right to defend herself. "[A] person has the right to repel force by force in the defense of his person, his family or his habitation[.]" *State v. Cook*, 204 W.Va. 591, 598, 515 S.E.2d 127, 134 (1999) *quoting State v. W.J.B.*, 166 W.Va. 602, 608, 276 S.E.2d 550, 554 (1981). Furthermore,

in general, the right of self-defense cannot be successfully invoked by an aggressor or one who provokes an altercation, unless he or she in good faith first withdraws from the combat at a time and in a manner to let the other person know that he or she is withdrawing or intends to withdraw from further aggressive action.

*State v. Riley*, 137 Wash.2d 904, 976 P.2d 624, 627 (1999) (citation omitted). *See also* 6 Am.Jur.2d *Assault and Battery* § 62 (1999) ("If a person voluntarily, that is aggressively and willingly, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight, withdraws from it, and gives notice that he has done so."). In this case, the appellant presented no evi-

dence that she attempted to withdraw from the situation she had created.

▆▆▆ Moreover, the evidence simply does not suggest in any way that this was a case of a mutual affray. As set forth above, the evidence clearly established that the appellant was the initial aggressor. This Court has held that "[i]nstructions must be based upon the evidence and an instruction which is not supported by evidence should not be given." Syllabus Point 4, *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971). Based on all the above, we cannot say that the circuit court abused its discretion in refusing to give the jury the appellant's proposed self-defense instruction.

## B. Exclusion of Evidence

### 1. The Appellant's Medical Records

▆▆▆ The appellant next argues that the trial court erred in refusing to admit her medical records which showed the nature of the injuries she received during the altercation. The appellant says that the trial court excluded this evidence without specifying the basis for its ruling. She maintains that these records were crucial to her claim of self-defense because they were the most persuasive evidence regarding how severely she was attacked by Ms. McCoy, the alleged victim.

Having carefully reviewed the transcript of the trial, we find no merit to the appellant's argument. It is clear from the record that the trial court excluded the appellant's medical records from evidence for two reasons. First, the appellant failed to offer any foundational evidence for the admission of the medical records.

---

6. The appellant proffered evidence consisting of a transcript of a taped statement that a private investigator took from Ms. Barker concerning comments Ms. McCoy made on the evening of the alleged arson. Ms. Barker indicated in the statement that Ms. McCoy accused another person of starting the fire.

7. W.Va. R. Evid. 404 provides, in pertinent part:
   (a) *Character evidence generally.*—Evidence of a person's character or a trait of character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion, except:

We have previously recognized the admissibility of medical records under the hearsay exception contained in Rule 803(6) [of the West Virginia Rules of Evidence]. *Tedesco v. Weirton General Hosp.*, 160 W.Va. 466, 235 S.E.2d 463 (1977). We have noted, however, that such "records may be admissible as records kept in ordinary course of business if verified by their custodian or supervisor." *State v. Bias*, 171 W.Va. 687, 692, n. 4, 301 S.E.2d 776, 782, n. 4 (1983).

*Daniel B. by Richard B. v. Ackerman*, 190 W.Va. 1, 5, 435 S.E.2d 1, 5 (1993). Here, the appellant sought admission of the medical records without testimony from a custodian or other qualified witness. Secondly, the appellant failed to disclose the records to the State prior to trial as required by the trial court's discovery order. In light of these facts, we cannot say that the trial court abused its discretion by refusing to admit the appellant's medical records as evidence in this case.

### 2. Evidence Regarding the Alleged Arson of Appellant's Medical Practice

▆▆▆ The appellant also argues that the trial court erred by failing to admit evidence which she says indicated that Ms. McCoy arranged for the arson of her medical office during the night after the alleged offense occurred.[6] The appellant asserts that this evidence should have been admitted pursuant to Rule 404 of the West Virginia Rules of Evidence as support for her self-defense theory. Rule 404 provides that a victim's character is a proper issue for the jury to consider in a self-defense case.[7]

. . . .

(2) Character of victim of a crime other than a sexual conduct crime.—Evidence of a pertinent trait of character of the victim of the crime, other than a crime consisting of sexual misconduct, offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor[.]

This Court has held that, "[t]he appellate review of a ruling of a circuit court is limited to the very record there made and will not take into consideration any matter which is not a part of that record." Syllabus Point 2, *State v. Bosley*, 159 W.Va. 67, 218 S.E.2d 894 (1975). In other words, " ' "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syllabus Point 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958).' Syl. pt. 2, *Duquesne Light Co. v. State Tax Dept.*, 174 W.Va. 506, 327 S.E.2d 683 (1984), *cert. denied,* 471 U.S. 1029, 105 S.Ct. 2040, 85 L.Ed.2d 322 (1985)." Syllabus Point 2, *Crain v. Lightner*, 178 W.Va. 765, 364 S.E.2d 778 (1987). In reviewing the record in this case, we find no instance where the appellant sought to admit the evidence at issue as support for her self-defense theory.

Instead, the appellant only sought to admit the evidence to attack Ms. McCoy's credibility.[8] However, pursuant to Rule 608 of the West Virginia Rules of Evidence, "Specific instances of conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence." Thus, this evidence could not be used to impeach Ms. McCoy. Accordingly, the circuit court did not err in refusing to admit this evidence for the purpose of attacking Ms. McCoy's credibility.

### 3. The Photographs

Finally, the appellant claims that the trial court erred by refusing to admit into evidence photographs portraying the dangerousness of the neighborhood where the alleged offense occurred. These photographs were offered by the appellant to show why she sought to extricate Ms. Barker from the house. The appellant says that the court did not state its rationale on the record for refusing to allow the jury to view the photographs,

and in light of the importance of this evidence to her theory of the case, the ruling should not be upheld.

Again, having thoroughly reviewed the record, we find no merit to the appellant's argument. Based on the trial transcript, it is clear that the court excluded the pictures as cumulative evidence. In making its ruling, the trial court noted that the investigating police officer testified that the neighborhood where the offense occurred is a dangerous place. The court then stated "I think that's—you have made your point...I don't think you need all of these pictures in here to show that." [9] Rule 403 of the West Virginia Rules of Evidence provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the ... needless presentation of cumulative evidence." Accordingly, we cannot say that the circuit court abused its discretion in refusing to admit these photographs as evidence.

### IV. CONCLUSION

Thus, for the reasons set forth above, the final order of the Circuit Court of Mercer County entered on January 23, 2002, is affirmed.

Affirmed.

MAYNARD, Justice, dissenting, in part, and concurring, in part.

(Filed Dec. 8, 2003)

At the outset, I am faced with an unusual dilemma. It is difficult to figure out how to style this separate opinion. Without trying to distinguish between the two cases, and for want of anything better, I have settled on the above caption.

I write separately because I am firmly convinced that the criminal justice system treated the two defendants in these two cases so disparately as to be patently unfair. That being said, let me also say that the

---

8. The appellant's counsel stated,

   I think it goes straight to the lady's credibility because of the degree of hatred and ill will. It shows that. It demonstrates a willingness to do whatever it takes to get this lady, whether it

be burn her building down or taking the witness stand and telling things that aren't true.

9. The trial court did admit into evidence a photograph of the house where the alleged offense occurred.

circuit judge in each case did nothing wrong. The result reached under each set of circumstances is entirely proper, and any judge, including the author of this separate opinion, could easily have reached the same result and sentence.

Nonetheless, I believe the dissimilarity with which the two defendants in these cases were treated should be pointed out by someone in some fashion. In order to shed light on the dissimilarity, one must compare the facts and contrast the charges and sentences. The actual conduct engaged in by each of these defendants when compared is not all that different. However, the charges levied against and sentences imposed upon the two are very different. The dissimilarity troubles me.

First, let me compare the facts. Both of these situations grew out of relationships in which couples were living together. Both of the situations included a member of a relationship who wished to dominate and control the other member. At the time the other member became disaffected with the relationship and attempted to leave, the dominating member felt his or her power and control slipping. And in the usual manner of domineering controllers, that member decided that he or she was not going to let that happen. Violence quickly erupted. At least as far as I understand the concept of domestic violence, the sum and substance of the conduct in both of these cases really constitutes domestic violence.

In *State v. Brooks,* 214 W.Va. 562, 591 S.E.2d 120 (No. 31158 Nov. 14, 2003), Brooks, in a jealous rage, went to the house in which McCoy and Barker were living, not once, not twice, but three times. The third time she approached the house, she wreaked havoc on the place. She threw a concrete block through the front door to gain entrance. She carried a steel crowbar and a crescent wrench, tools which by anyone's standards can be used as deadly weapons. Brooks attacked Barker with the crowbar, striking her in the elbow. After McCoy wrestled the crowbar from her, Brooks attempted to attack McCoy with the crescent wrench. She bit McCoy on the finger and forearm. Brooks herself suffered a broken nose in the fracas. I am relatively certain that some or all of those involved must have needed medical treatment, and police officers were called to the scene.

Before I relate the facts in *State v. Richardson,* 214 W.Va. 410, 589 S.E.2d 552 (2003), I readily admit that the violence suffered by Franks at the hands of Richardson is far more egregious than the violence suffered by Barker and McCoy at the hands of Brooks. Richardson and Franks were at an outing at the dog track in Nitro during which time both were drinking. Richardson then took Franks home and left. He later returned and entered her apartment through a window. After hitting Franks several times, he forced her to leave with him. He dragged her by her neck down the street with no clothes on to a building that was owned by his grandfather. Richardson pulled a gun on Franks while he was beating her. When she attempted to leave, he began punching, kicking, and biting her. He sexually assaulted her. He burned her with a cigarette. He poured gasoline on her legs and feet and lit a cigarette. After he threatened to burn her up, he left briefly, and then returned and urinated and spat on her. All of this occurred at a time when Franks was three months pregnant. I should mention that in spite of the violence inflicted upon her by Richardson, the victim has supported Richardson throughout these proceedings. Franks appeared before the trial court and pleaded with the judge not to incarcerate the defendant. She even appeared at the oral argument before this Court to show her support for Richardson.

Those are the facts. Now to the charges and sentences faced by each defendant. Brooks was charged with burglary and malicious assault. The burglary charge was dismissed; the indictment was amended to charge Brooks with malicious assault by causing serious bodily harm. At trial, she was found guilty of misdemeanor battery and sentenced to one year in prison and fined $500.00. Her sentence was suspended. Brooks was placed on probation for three years with six months of home confinement and ordered to perform 450 hours of community service. There is absolutely no mention

whatsoever of domestic battery or domestic violence.

Contrast that with Richardson's charges and sentence. Richardson was charged with kidnaping, wanton endangerment, malicious wounding, and domestic battery. He pleaded guilty to kidnaping and wanton endangerment; the malicious wounding and domestic battery charges were dropped. He was sentenced to 30 years in the penitentiary on the kidnaping charge and five years, to run concurrently with the kidnaping sentence, on the wanton endangerment charge.

What we have here are two cases of horribly outrageous conduct that are really about domestic violence. In both *Brooks* and *Richardson*, we have two very controlling individuals with limited emotional tools who inflicted serious violence on other people with whom they had been romantically involved. There is no doubt that the conduct in *Richardson* is more offensive. But is it 30 years more egregious!? Remember, Brooks had her sentence suspended and got home confinement, but not a single day in jail, while Richardson got 30 years in prison. If we reverse the relative positions of the two and keep the conduct as it is presented here, would the results in the two cases be different? If Ms. Brooks acted in the manner in which Mr. Richardson conducted himself, would she be facing 30 years in prison? On the other hand, would Mr. Richardson escape prison time completely if he broke into the home of someone who was trying to leave him and assaulted two people?

That being said, let me also state that I agree with the majority that Richardson should go to prison for ten years. Certainly he should not be locked up for 30 years. I believe equally strongly that Brooks should have served time. Until society sees its way clear to treat people who commit similar domestic violence crimes in a similar manner, we will make no headway in our fight against domestic violence.

As I stated previously, I agree that Richardson's sentence absolutely should be reduced. However, we probably should have remanded the case to the trial court with guidance, perhaps even with specific suggestions and strong guidance, regarding the manner in which sentencing should be handled. I agree with Justice Davis that "no justification existed for the majority to impose a specific sentence in this case." Sentencing is the trial court's job. But I must admit that ten years in prison is an appropriate sentence for Mr. Richardson's outrageous criminal conduct while thirty years in prison, considering that Ms. Brooks will not serve a day in jail, is far too severe. In sum, the judicial system perhaps did the right and just thing in Richardson's case, except for the troublesome sentencing, and did the wrong thing in Brooks' case.[1]

For the foregoing reasons, and not knowing what else to call this separate opinion, I respectfully concur, in part, and dissent, in part, from the majority opinions which have been filed in these cases.

---

1. Actually, to be precise, in *Brooks* I concur with the entire opinion; it is only the sentence I disagree with, and, although I disagree with

Brooks' sentence, this Court has absolutely no authority to increase her sentence, so "dissent" may not be completely accurate.