410 S.E.2d 712

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Robert Mitchell BARKER, Defendant Below, Appellant.**

**No. 20141.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1991.

Decided Oct. 22, 1991.

Ernest M. Douglass, Parkersburg, for appellant.

Andrew F. Tarr, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

The sole issue before us in this appeal is whether the Circuit Court of Wood County erred in sentencing the appellant, Robert Mitchell Barker, to a life sentence under the habitual criminal statute, *W. Va. Code*, 61–11–18 [1943].[1] The appellant contends that the imposition of a life recidivist sentence violates the proportionality clause in Article III, Section 5 of the *West Virginia Constitution* in light of the non-violent nature of the crime and of his previous convictions for forgery and uttering. We agree, and accordingly, we remand this case to the circuit court for resentencing.

---

1. The final paragraph of *W. Va. Code*, 61–11–18 [1943] provides:

When it is determined, as provided in section nineteen hereof, that such person shall have been twice before convicted in the Unit-

ed States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the penitentiary for life.

A warrant for arrest was issued on January 6, 1988, charging that the appellant committed a felony by forging and cashing a check belonging to Mark Swingle in the amount of $40.48. The appellant was subsequently indicted on one count of forgery and one count of uttering. A trial by jury was held on May 3, 1988, and the jury returned a verdict finding the appellant guilty of the offenses of forgery and uttering in violation of *W.Va.Code,* 61–4–5 [1961].[2]

Pursuant to *W.Va.Code,* 61–11–19 [1943],[3] the State filed an information with the circuit court stating that the appellant had previously been convicted and sentenced for three other felonies. The State represented in the information that the appellant had been convicted of and sentenced for: (1) the offense of uttering on November 18, 1974; (2) the offenses of forgery and uttering on September 8, 1978; and (3) the offenses of forgery and uttering on December 6, 1979.[4]

A recidivist trial was held on June 3, 1988, and the jury returned a verdict identifying the appellant as being the same person who was convicted of the previous crimes stated in the information and convicting him of recidivism. The circuit court subsequently sentenced the defendant to be confined in the penitentiary for life under the habitual criminal statute, *W.Va. Code,* 61–11–18 [1943]. The appellant now appeals his life sentence under the habitual criminal statute.

The sole issue in this appeal is whether the life sentence imposed upon the appellant under the recidivist statute, *W.Va. Code,* 61–11–18 [1943], violated the proportionality principle. The appellant asserts that the sentence of life imprisonment is disproportionate to the offenses upon which it is based because the crimes of which the appellant had previously been convicted were nonviolent crimes. The State argues that the life sentence is not disproportionate because the appellant has demonstrated a propensity to commit the crimes of forgery and uttering.

We explained the procedure for analyzing a life recidivist sentence under the proportionality principle in *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 533, 276 S.E.2d 205, 212 (1981):

> When we analyze a life recidivist sentence under proportionality principles, we are in effect dealing with a punishment that must be viewed from two distinct vantage points: first, the nature of the third offense and, second, the nature of the other convictions that support the recidivist sentence.

*See also State ex rel. Boso v. Hedrick,* 182 W.Va. 701, 708, 391 S.E.2d 614, 621 (1990). We also pointed out in *Wanstreet* that although the sole emphasis cannot be placed on the character of the final felony which triggers the life recidivist sentence, "the third felony is entitled to more scrutiny than the preceding felony convictions since it provides the ultimate nexus to the sentence." 166 W.Va. at 534, 276 S.E.2d at 212. *See also State v. Miller,* 184 W.Va. 462, 465, 400 S.E.2d 897, 900 (1990); *State ex rel. Boso v. Hedrick,* 182 W.Va. at 708, 391 S.E.2d at 621; *State v. Deal,* 178 W.Va. 142, 147, 358 S.E.2d 226, 231 (1987).

Finally, we articulated the standard for review of life recidivist sentences in syllabus point 7 of *State v. Beck,* 167 W.Va. 830, 286 S.E.2d 234 (1981):

> The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III,

---

**2.** *W.Va.Code,* 61–4–5 [1961] provides, in relevant part, that "[i]f any person forge any writing, ..., to the prejudice of another's right, or utter or attempt to employ as true such forged writing, knowing it to be forged, he shall be guilty of a felony[.]"

**3.** *W.Va.Code,* 61–11–19 [1943] provides, in pertinent part: "It shall be the duty of the prosecuting attorney when he has knowledge of former sentence or sentences to the penitentiary of any person convicted of an offense punishable by confinement in the penitentiary to give information thereof to the court immediately upon conviction and before sentence."

**4.** The information was amended at the recidivist trial to change the date of one of the appellant's convictions of the offense of forgery and uttering from December 9, 1979, to December 6, 1979.

Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute.

The appellant in the case before us was convicted of the crimes of forgery and uttering, neither of which can be characterized as violent crimes. Moreover, none of the underlying felonies committed by the appellant involved actual or threatened violence to any person. Furthermore, the penalty upon conviction of forgery or uttering is confinement in the penitentiary for not less than one nor more than ten years. *W. Va. Code*, 61–4–5 [1961].

We believe that the imposition of a life sentence under the recidivist statute in this case is unjustified. Therefore, we conclude that this case should be remanded to the Circuit Court of Wood County for resentencing.

Remanded for resentencing.

410 S.E.2d 714

**The COMMITTEE ON LEGAL ETHICS OF THE WEST VIRGINIA STATE BAR, Complainant,**

**v.**

**Henry Clay HART, Jr., a Member of the West Virginia State Bar, Respondent.**

**No. 20222.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 10, 1991.

Decided Oct. 22, 1991.

Maria Marino Potter, Bar Counsel, Charleston, for complainant.

Henry Clay Hart, Jr., pro se.

## PER CURIAM:

In this attorney disciplinary proceeding, the Committee on Legal Ethics of the West Virginia State Bar ("the Committee") recommends that this Court annul the license to practice law of the respondent, Henry Clay Hart, Jr. Mr. Hart plead guilty in United States District Court for the Southern District of California to aiding and assisting in the preparation and presentation of a false and fraudulent federal income tax return in violation of 26 *U.S.C.* § 7206(2) (1988).[1] Mr. Hart maintains that he has a bona fide defense to the allegations contained in the Committee's complaint, and asserts that he is entitled to an evidentiary mitigation hearing. For the reasons stated below, we conclude that Mr. Hart is not entitled to an evidentiary mitigation hearing and hereby order the annulment of his license to practice law in the State of West Virginia.

### I

An information dated October 12, 1990, was filed against Mr. Hart in the United States District Court of the Southern District of California charging that he willfully aided and assisted in, and procured, counseled and advised, the preparation and presentation of an individual income tax return to the Internal Revenue Service which was false and fraudulent as to a material matter. The information charged that the income tax return of Robert G. Brown represented that Mr. Brown was entitled under the provisions of the Internal Revenue Laws to claim a partnership operation loss of $13,509.00 and a $25,732.00 tax credit resulting from investing in Whitewater River Electric Power Limited, a windmill partnership. The information further charged that Mr. Hart knew that Mr. Brown was not entitled to claim either the operating loss or the tax credit for 1984. On October 12, 1990, Mr. Hart signed a waiver of indictment in which he agreed that the proceedings in this case would be by information rather than by indictment.

---

1. 26 *U.S.C.* 7206(2) (1988) provides, in relevant part, that any person who

 "[w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, ..., the internal revenue laws, of a return, ..., which is fraudulent or is false as to any material matter, ...; or

 ....

 shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than three years, or both, together with the costs of prosecution.

On January 22, 1991, Mr. Hart pleaded guilty to aiding and assisting in the preparation and presentation of a false and fraudulent federal income tax return in violation of 26 *U.S.C.* § 7206(2) (1988). Mr. Hart was sentenced to a term of imprisonment for a period of eighteen months.

## II

 The burden of proof is on the Committee to prove by full, preponderating and clear evidence the charges contained in the complaint filed on behalf of the Committee. Syl. pt. 1, *Committee on Legal Ethics v. Lewis,* 156 W.Va. 809, 197 S.E.2d 312 (1973). However, we recognized in syllabus point 1 of *Committee on Legal Ethics v. Folio,* 184 W.Va. 503, 401 S.E.2d 248 (1990), that proof of a final conviction satisfies the Committee's burden of proof:

‘ "Where there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction." Syllabus Point 2, *Committee on Legal Ethics v. Six,* [181] W.Va. [52] 380 S.E.2d 219 (1989).’ Syl. Pt. 1, *Commit-*

