589 S.E.2d 552

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Raymond RICHARDSON, Defendant Below, Appellant.**

No. 31121.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 2003.

Decided Nov. 10, 2003.

Concurring and Dissenting in part Opinion of Justice Davis Nov. 18, 2003.

Dissenting and Concurring in part Opinion of Justice Maynard Dec. 8, 2003.

Davis and Maynard, JJ., concurred in part, dissented in part, and filed opinions.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, for Appellee.

Troy N. Giatras, Mark L. French, Giatras & Webb, Charleston, for Appellant.

PER CURIAM:

The appellant in the present proceeding, Raymond Richardson, was sentenced to 30 years in the State Penitentiary for kidnaping. He was also sentenced to five years in the penitentiary, to run concurrently with the kidnaping sentence, for wanton endangerment. On appeal, the appellant claims that the 30–year sentence for kidnaping was disproportionate to the crime committed, and that the sentence is, as a consequence, unconstitutionally impermissible.

I.

FACTS

This appeal arises out of a domestic dispute. Prior to the dispute, the appellant, Raymond Richardson, who was 20–years–old, had been living intermittently with a longtime girlfriend, Angela Franks, who was pregnant with his child. On the day of the dispute, both the appellant and Ms. Franks had been drinking, and the appellant had been entertaining the suspicion that Ms. Franks had been cheating on him.

The dispute erupted into violence after the appellant delivered Ms. Franks to her apartment and after she went to bed. The appellant initially left the apartment, but later reentered it and confronted Ms. Franks. A heated argument ensued, and during the argument, the appellant forcefully struck Ms. Franks several times and forced her to exit the apartment and walk down a side street to a building owned by his grandfather. In the building, the appellant continued to confront Ms. Franks and made various serious threats against her. Eventually, however, the appellant calmed down, and he and Ms. Franks returned to the apartment where they made love and fell asleep.

The next day, the appellant's mother who had stopped at Ms. Franks' apartment, became alarmed when she observed various bruises and knots on Ms. Franks' face. She then took Ms. Franks to her own home where she fed Ms. Franks and helped her clean up. Subsequently, she persuaded Ms. Franks to go to a hospital.

Following Ms. Franks' visit to the hospital, the incident was reported to the authorities, and the appellant was charged with, and indicted for, kidnaping, wanton endangerment, malicious wounding and domestic battery.

After considerable development of the case, the appellant and the State entered into plea bargain negotiations, and the negotiations resulted in a plea bargain agreement under which the appellant agreed to plead guilty to the charges of kidnaping and wanton endangerment, and the State agreed to drop the malicious wounding and domestic battery charges.

After the parties entered into the plea bargain agreement, the appellant actually entered guilty pleas to the kidnaping and wanton endangerment charges, as provided in the plea bargain agreement.

Prior to sentencing the appellant on the pleas, the Circuit Court of Kanawha County conducted a sentencing hearing at which Ms. Franks, the victim, in essence, pled with the court that the court impose a minimal sentence upon the appellant. She stated:

> I feel even though what he did to me was wrong, I'm over it, you know. It's been two and a half years. I've moved on with my life. I'm going to school. I've got kids to raise. This has been going on for far too long. He's learned his lesson. It's over. I'm not physically hurt by it still. Nothing mentally was wrong with me. My son is perfectly healthy. I mean, I could see if something was wrong with one of us physically to where I can't do anything or something was wrong with my son, to give him the type of sentencing that they want to give him but there's no point. I go to visit him, me and my children... I go up to the jail. I have contact visits and regular visits....

Ms. Franks also testified that in her visits with him:

> He seems fine. There's no rage. There's no temper. He knows what he did. I know what he's done. We've both sat and talked about it. He's apologized umpteen amount of times. I'm just tired of it. He's tired of it. There's no need for him to be there. He needs—I feel he needs to be out.... It wasn't the way I wanted it to be, but it's over. That's how I feel. I really feel it should just be over.

Another witness at the sentencing hearing was Dr. David A. Clayman. Dr. Clayman was a clinical and forensic psychologist who assessed the appellant. Dr. Clayman concluded that the appellant was neither a predator nor an excessively violent person. He indicated that the appellant did not have a history of violence, and he expressed the opinion that the appellant's behavior on the night of the incident giving rise to the charges was "aberrant" and he surmised that

it was induced by alcohol ingestion. He also stated that his assessment of the appellant for violence and sexual violence predator issues showed that the appellant demonstrated a low risk of repeating the behavior. He further indicated that the longer the appellant spent in prison, the less likely he would be able to engage in socially acceptable behavior upon release.

As has previously been indicated, at the conclusion of the sentencing hearing, the circuit court sentenced the appellant to 30 years in the State Penitentiary for kidnaping, and five years in the State Penitentiary for wanton endangerment.

As has also been stated previously, on appeal, the appellant claims that the 30–year sentence for kidnaping is constitutionally impermissible given the circumstances of this case.

## II.

### STANDARD OF REVIEW

■ In Syllabus Point 1 of *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997), this Court stated that: "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands."

## III.

### DISCUSSION

■ Both the United States Constitution and the West Virginia Constitution prohibit sentences which are disproportionate to the crime committed. The Eighth Amendment to the United States Constitution creates the federal prohibition. *See Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). West Virginia's constitutional prohibition is contained in West Virginia Constitution, Article III, § 5, which provides: "Penalties shall be proportioned to the character and degree of the offense."

■ In *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983), this Court established a so-called subjective test for determining whether a sentence violates the constitutional disproportionality principle. That test questions whether a sentence offends "the conscience and offends the fundamental notions of human dignity." Specifically, in Syllabus Point 5 of *State v. Cooper, id.,* the Court stated:

> Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

Further, in *State v. Cooper, id.,* the Court suggested that factors affecting the subjective impact of a sentence include the age of the defendant, statements of the victim, and evaluations and recommendations made in anticipation of sentencing.

■ With these principles in mind, this Court has examined the circumstances of the present case. The facts show that the appellant was twenty years old at the time of the crime charged—close in age to the nineteen-year-old in the *Cooper* case. The victim, Ms. Franks, who is the mother of the appellant's child, has stated that neither she, nor the child, was permanently injured as a result of the incident and has plainly expressed the opinion that a lengthy sentence is unjustified. She has also suggested that it would be in her best interest for the appellant to receive a lesser sentence. Finally, the psychological evidence in the case has indicated that the appellant's behavior on the night of the crime charged was "aberrant" and that the appellant has demonstrated a low risk of repeating it. The psychological evidence also has indicated that the longer the appellant remains in prison, the less he will be able to engage in socially acceptable behavior.

On the wanton endangerment charge, which involved actual acts of violence against Ms. Franks, the appellant was sentenced to five years in the State Penitentiary, as provided by W. Va.Code 61–7–12. On the other hand, for the kidnaping, the charge in issue

in the present appeal, the appellant was sentenced to the maximum 30 years in the State Penitentiary allowable under W. Va.Code 61–2–14a(a)(4).[1] Rather plainly, the acts of violence harmed Ms. Franks more seriously than the kidnaping, and it appears that the kidnaping was ancillary to the acts of violence, rather than an end in itself.

■ Under the overall circumstances, this Court believes that the 30–year sentence for kidnaping imposed upon the appellant does shock the conscience and is constitutionally impermissible under *State v. Cooper, id.* The Court also believes that the ten-year minimum sentence for kidnaping as set forth in W. Va.Code 61–2–14a(a)(4) should have been imposed, rather than the 30–year sentence imposed by the circuit court.

For the reasons stated, the judgment of the Circuit Court of Kanawha County is reversed insofar as it relates to the appellant's kidnaping sentence, and this case is remanded with directions that the appellant be sentenced to 10 years in the State Penitentiary, to run concurrently with the wanton endangerment sentence, on the kidnaping charge.

Reversed and remanded with directions.

Justice DAVIS and Justice MAYNARD concur in part; and dissent, in part; and files separate opinions.

DAVIS, J., concurring in part and dissenting in part.

(Filed Nov. 18, 2003)

In this proceeding the majority determined that a sentence of 30 years imposed upon Raymond Richardson for the crime of kidnapping "shock[s] the conscience and is constitutionally impermissible[.]" In view of the fact that the kidnapping was incidental to underlying crimes and the victim's plea of mercy for Mr. Richardson, I reluctantly concur in the majority's determination that the sentence was excessive.[1] However, the ma-

---

1. West Virginia Code 61–2–14a(a)(4) provides for a sentence of from 10 to 30 years.

1. My concurrence is reluctant because I continue to be troubled by the egregious context of domestic violence within which these crimes were committed and which details the majority has neglected to mention in its statement of the facts underlying this appeal. According to the statement Ms. Franks gave to police on May 13, 1999, the day of the incidents giving rise to Mr. Richardson's indictments and convictions at issue herein, the following events transpired:

> The first thing that happened was that Raymond and I and another couple went to the Dog Track in Nitro to have dinner and to bet on the dogs. We went back to the other couple's apartment. Me and my female friend went to the store and to take Raymond's little cousin home. When we got back Raymond was silent and he had an attitude towards me. I told him that if he was going to have an attitude we should just go home. We went home. He would not get out of the car. He acted as though he was dropping me off. I asked him what was wrong and he would not say anything. I went into the apartment and went straight to bed. About 20 or 30 minutes later he came in through a downstairs window and charged upstairs. I was scared because of the noise then he started beating on me. He was asking why I was cheating on him and why was the window open. At first he was punching me with his fists, kicking me, and biting me. Then he said you are coming with me and we went outside. I had to go. He had me by my neck. At each corner we stopped at

> he made me remove a piece of clothing. He did this until I had nothing left on. He started beating me some more. He struck me very hard in the stomach which knocked all the air out of me. Then he beat on me some more. Then he poured gasoline on my legs and kept interrogating me as to who I was cheating with. He said he would burn me up. He walked away then came back. He urinated on me and spit on me. Then he punched me in the head. He kept doing that. I was already on the ground. Then he strangled me.
> . . . .
> After that he told me ... to put my clothes back on. As we walked back to the apartment, he said that this was the last time I would see this place. We got back to the apartment he continued to hit me. I finally said that I was cheating just to get him to stop beating on me. He had said if I would just admit it he would stop. He went downstairs then he came back up and laid in the bed. He told me that I could not fall asleep because if he saw me falling asleep he would beat me again. He was lying there half asleep. After all of this had happened it was about 8:00 am. Then he started going on about him not having anything and that he has nothing. He said he should have died with his friend last December. Then he went to break my chain that he bought me on Mother's Day. He cut his finger really bad. He was losing a lot of blood. A friend of his came and knocked on the door. Raymond asked me if he was the one. I said yes. He said when his friend showed up at door again he wanted me to shoot him. When the guy came I pointed Raymond's gun to the

jority's decision to remand this case for the circuit court to impose a specific punishment of 10 years, lacks precedent in this State. For the reasons set out below, I dissent from that part of the decision to require the circuit court to impose a specific sentence.

## The Determination of a New Sentence Should Have Been Left to the Discretion of the Trial Judge

It has been recognized that "an appellate court may in *rare instances* not only reverse and remand because of an excessive sentence but may also state specifically what sentence may be imposed." Franklin D. Cleckley, II Handbook on West Virginia Criminal Procedure, 301 (1993) (emphasis added). The leading case for this proposition is the decision in *Yates v. United States*, 356 U.S. 363, 78 S.Ct. 766, 2 L.Ed.2d 837 (1958). In *Yates* the Supreme Court remanded a contempt case for reconsideration of the length of the sentence. On remand, the federal district court imposed the same sentence. The Supreme Court determined that the federal district court's refusal to follow remand instructions warranted imposition of a specific punishment by the Court. The Court did so as follows:

> [W]hen in a situation like this the District Court appears not to have exercised its discretion in the light of the reversal of the judgment but, in effect, to have sought merely to justify the original sentence, this

Court has no alternative except to exercise its supervisory power over the administration of justice in the lower federal courts by setting aside the sentence of the District Court.

> [T]his Court is of the view, exercising the judgment that we are now called upon to exercise, that the time that petitioner has already served in jail is an adequate punishment for her offense.

*Yates,* 356 U.S. at 366–67, 78 S.Ct. at 768–69.

My research has revealed that this Court has set aside a criminal sentence of imprisonment as excessive or disproportionate in a number of cases. *See State v. David D.W.,* 214 W. Va. 167, 588 S.E.2d 156 (2003); *State v. Lewis,* 191 W.Va. 635, 447 S.E.2d 570 (1994); *State v. Davis,* 189 W.Va. 59, 427 S.E.2d 754 (1993); *State v. Barker,* 186 W.Va. 73, 410 S.E.2d 712 (1991); *State v. Miller,* 184 W.Va. 462, 400 S.E.2d 897 (1990); *State ex rel. Boso v. Hedrick,* 182 W.Va. 701, 391 S.E.2d 614 (1990); *State v. Deal,* 178 W.Va. 142, 358 S.E.2d 226 (1987); *State v. Buck (II),* 173 W.Va. 243, 314 S.E.2d 406 (1984); *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983); *State v. Buck (I),* 170 W.Va. 428, 294 S.E.2d 281 (1982). However, in each of those decisions this Court remanded the case with instructions that the trial court determine a permissible sentence. That is, in none of those decisions did this

---

other guy's head and he ran. Raymond took the gun back from me then. Raymond then got his keys and left saying he was going to the hospital for his finger. He told me that I better not leave the house or I would not have my two daughters anymore. After he left I stayed in my room and cried. Then Raymond's mother came. She hugged me because she had just learned what had happened. She told me to put some clothes on and she told me to leave with her. I have not heard from Raymond since.

Additional facts that Ms. Franks reported to the detective investigating the incident indicate that she was treated at CAMC Womens and Childrens Hospital for numerous injuries inflicted upon her. Angela had visible injuries all over her body, including her face, neck, torso, vagina, arms and legs. These injuries included heavy bruising, swelling, abrasions, cigarette burns, and bite marks.... The accused [Mr. Richardson] pointed a loaded handgun at Angela and threatened to kill her.... The accused burned Angela with cigarettes during his interrogation

and grabbed her vagina with his hand causing an abrasion to the right labia. The accused held Angela against her will throughout the night and into the morning and afternoon hours.

Finally, as if these facts are not treacherous enough standing on their own, the record also showed that, at the time of this brutal beating, Ms. Franks was three months pregnant. Fortunately, neither Angela nor her child appear to have sustained any permanent injuries from Mr. Richardson's reign of terror.

In light of all of these details of the incidents underlying this appeal, then, it is with great reluctance that I concur in the majority's decision on this point. Nevertheless, I agree with the Court's conclusion that the circuit court committed error by imposing the maximum sentence upon Mr. Richardson for the kidnapping conviction insofar as such sentence failed to consider that the kidnapping was incidental to the more horrific crimes with which Mr. Richardson had been charged and further failed to consider Ms. Franks' plea for mercy during his sentencing hearing.

Court direct a trial judge to impose a specific sentence. In one of those decisions, *Buck (II)*, this Court expressly declined to exercise its inherent authority to impose a specific sentence.

In *Buck (II)* this Court was asked to determine whether a sentence of 75 years imprisonment was excessive. This Court had previously determined in *State v. Buck (II)*, 173 W.Va. 243, 314 S.E.2d 406 (1984) that the sentence was excessive and remanded the case for resentencing. On remand the trial court again sentenced the defendant to 75 years imprisonment. In *Buck (II)* we again found the sentence was excessive. The defendant asked this Court in *Buck (II)* to instruct the trial court to impose a specific sentence. After citing to the *Yates* decision, we addressed this request as follows:

> We decline the defendant's invitation to hold that we have the power ... by virtue of our inherent supervisory powers to set a reduced sentence for him. Instead, we will once again remand this case for reconsideration of the sentence under the guidelines herein contained. We do, however, conclude that the involved circuit judge should not preside upon the resentencing, and we will, therefore, by an appropriate administrative order designate another circuit judge to handle the resentencing.

*Buck (II)*, 173 W.Va. at 248, 314 S.E.2d at 411. Although the facts of *Buck (II)* presented the rare instance in which an appellate court may impose a specific sentence, we declined to do so. *See State v. David D.W.*, 214 W.Va. 167, 177, 588 S.E.2d 156, 166 (2003) ("By imposing a total sentence of 1,140 years to 2,660 years in prison upon the appellant in this case, the trial court violated the proportionality principle and abused its discretion. Therefore, we remand this case to the trial court for resentencing within its discretion."); *State v. Cooper*, 172 W.Va. 266, 274, 304 S.E.2d 851, 859 (1983) ("It would seem that a ten-year sentence [recommended by the probation officer] would be appropriate; however, we remand to the trial court for resentencing according to his best judgment, consistent with this opinion.").

In the instant case the majority was not confronted with a trial court that refused to reduce a sentence ordered by this Court. Without such a refusal, no justification existed for the majority to impose a specific sentence in this case. Moreover, the majority decision sends a chilling message to trial judges, *i.e.*, that the majority does not trust trial judges. Nothing in this case warranted stripping the trial judge of its authority to select a permissible sentence on remand. There was no evidence of bias or other impropriety on the part of the trial judge. Further, even if such evidence was shown, the better approach would have been to follow the precedent of *Buck (II)* and appoint a new sentencing judge.[2] See *Garrison v. State*, 762 P.2d 465, 469 (Alaska App.1988) (Singleton, J., concurring) ("[I]t is not the appellate court's function to impose sentence or to specify a specific sentence appropriate for a specific case."); *State v. Fortes*, 114 R.I. 161, 330 A.2d 404, 413 (1975) ("[R]eduction of sentence normally ought not to be made by a reviewing court but should be left on remand to the sentencing court. We agree that the trial court is better equipped than this court to handle this phase of the administration of justice. Therefore, we remand the cause to the Superior Court rather than determine here the appropriate sentence which would be within the bounds of discretion.").

In view of the foregoing, I concur in part and dissent in part.

MAYNARD, Justice, dissenting, in part, and concurring, in part.

(Filed Dec. 8, 2003)

At the outset, I am faced with an unusual dilemma. It is difficult to figure out how to

---

2. My research uncovered only one case where this Court found a sentence disproportionate and imposed a specific sentence. In *Keenan v. Bordenkircher*, 170 W.Va. 372, 294 S.E.2d 175 (1982) the defendant was an inmate who escaped from prison. After the defendant was caught he had an "administrative" hearing wherein he was found guilty of escape. The defendant was sentenced to 10 years in a punitive segregation facility called North Hall. The defendant challenged the sentence by filing a habeas petition in a circuit court. The circuit court denied relief. On appeal to this Court we found the ten year sentence was disproportionate. Insofar as the defendant had served approximately two years in North Hall, we held that "[t]his is adequate punishment and therefore we find that the remainder of his sentence is void." *Keenan*, 170 W.Va. at 374, 294 S.E.2d at 177.

style this separate opinion. Without trying to distinguish between the two cases, and for want of anything better, I have settled on the above caption.

I write separately because I am firmly convinced that the criminal justice system treated the two defendants in these two cases so disparately as to be patently unfair. That being said, let me also say that the circuit judge in each case did nothing wrong. The result reached under each set of circumstances is entirely proper, and any judge, including the author of this separate opinion, could easily have reached the same result and sentence.

Nonetheless, I believe the dissimilarity with which the two defendants in these cases were treated should be pointed out by someone in some fashion. In order to shed light on the dissimilarity, one must compare the facts and contrast the charges and sentences. The actual conduct engaged in by each of these defendants when compared is not all that different. However, the charges levied against and sentences imposed upon the two are very different. The dissimilarity troubles me.

First, let me compare the facts. Both of these situations grew out of relationships in which couples were living together. Both of the situations included a member of a relationship who wished to dominate and control the other member. At the time the other member became disaffected with the relationship and attempted to leave, the dominating member felt his or her power and control slipping. And in the usual manner of domineering controllers, that member decided that he or she was not going to let that happen. Violence quickly erupted. At least as far as I understand the concept of domestic violence, the sum and substance of the conduct in both of these cases really constitutes domestic violence.

In *State v. Brooks*, 214 W.Va. 562, 591 S.E.2d 120, 2003 WL 22682302 (No. 31158 Nov. 14, 2003), Brooks, in a jealous rage, went to the house in which McCoy and Barker were living, not once, not twice, but three times. The third time she approached the house, she wreaked havoc on the place. She threw a concrete block through the front

door to gain entrance. She carried a steel crowbar and a crescent wrench, tools which by anyone's standards can be used as deadly weapons. Brooks attacked Barker with the crowbar, striking her in the elbow. After McCoy wrestled the crowbar from her, Brooks attempted to attack McCoy with the crescent wrench. She bit McCoy on the finger and forearm. Brooks herself suffered a broken nose in the fracas. I am relatively certain that some or all of those involved must have needed medical treatment, and police officers were called to the scene.

Before I relate the facts in *State v. Richardson*, 214 W.Va. 410, 589 S.E.2d 552, 2003 WL 22533429 (No. 31121 Nov. 10, 2003), I readily admit that the violence suffered by Franks at the hands of Richardson is far more egregious than the violence suffered by Barker and McCoy at the hands of Brooks. Richardson and Franks were at an outing at the dog track in Nitro during which time both were drinking. Richardson then took Franks home and left. He later returned and entered her apartment through a window. After hitting Franks several times, he forced her to leave with him. He dragged her by her neck down the street with no clothes on to a building that was owned by his grandfather. Richardson pulled a gun on Franks while he was beating her. When she attempted to leave, he began punching, kicking, and biting her. He sexually assaulted her. He burned her with a cigarette. He poured gasoline on her legs and feet and lit a cigarette. After he threatened to burn her up, he left briefly, and then returned and urinated and spat on her. All of this occurred at a time when Franks was three months pregnant. I should mention that in spite of the violence inflicted upon her by Richardson, the victim has supported Richardson throughout these proceedings. Franks appeared before the trial court and pleaded with the judge not to incarcerate the defendant. She even appeared at the oral argument before this Court to show her support for Richardson.

Those are the facts. Now to the charges and sentences faced by each defendant. Brooks was charged with burglary and malicious assault. The burglary charge was dis-

missed; the indictment was amended to charge Brooks with malicious assault by causing serious bodily harm. At trial, she was found guilty of misdemeanor battery and sentenced to one year in prison and fined $500.00. Her sentence was suspended. Brooks was placed on probation for three years with six months of home confinement and ordered to perform 450 hours of community service. There is absolutely no mention whatsoever of domestic battery or domestic violence.

Contrast that with Richardson's charges and sentence. Richardson was charged with kidnaping, wanton endangerment, malicious wounding, and domestic battery. He pleaded guilty to kidnaping and wanton endangerment; the malicious wounding and domestic battery charges were dropped. He was sentenced to 30 years in the penitentiary on the kidnaping charge and five years, to run concurrently with the kidnaping sentence, on the wanton endangerment charge.

What we have here are two cases of horribly outrageous conduct that are really about domestic violence. In both *Brooks* and *Richardson*, we have two very controlling individuals with limited emotional tools who inflicted serious violence on other people with whom they had been romantically involved. There is no doubt that the conduct in *Richardson* is more offensive. But is it 30 years more egregious!? Remember, Brooks had her sentence suspended and got home confinement, but not a single day in jail, while Richardson got 30 years in prison. If we reverse the relative positions of the two and keep the conduct as it is presented here, would the results in the two cases be different? If Ms. Brooks acted in the manner in which Mr. Richardson conducted himself, would she be facing 30 years in prison? On the other hand, would Mr. Richardson escape prison time completely if he broke into the home of someone who was trying to leave him and assaulted two people?

That being said, let me also state that I agree with the majority that Richardson should go to prison for ten years. Certainly he should not be locked up for 30 years. I believe equally strongly that Brooks should have served time. Until society sees its way clear to treat people who commit similar domestic violence crimes in a similar manner, we will make no headway in our fight against domestic violence.

As I stated previously, I agree that Richardson's sentence absolutely should be reduced. However, we probably should have remanded the case to the trial court with guidance, perhaps even with specific suggestions and strong guidance, regarding the manner in which sentencing should be handled. I agree with Justice Davis that "no justification existed for the majority to impose a specific sentence in this case." Sentencing is the trial court's job. But I must admit that ten years in prison is an appropriate sentence for Mr. Richardson's outrageous criminal conduct while thirty years in prison, considering that Ms. Brooks will not serve a day in jail, is far too severe. In sum, the judicial system perhaps did the right and just thing in Richardson's case, except for the troublesome sentencing, and did the wrong thing in Brooks' case.[1]

For the foregoing reasons, and not knowing what else to call this separate opinion, I respectfully concur, in part, and dissent, in part, from the majority opinions which have been filed in these cases.

---

**1.** Actually, to be precise, in *Brooks* I concur with the entire opinion; it is only the sentence I disagree with, and, although I disagree with Brooks' sentence, this Court has absolutely no authority to increase her sentence, so "dissent" may not be completely accurate.