**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**September 16, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 14-0382** (Kanawha County 13-F-806)

**Raymond Richardson,**
**Defendant Below, Petitioner**

**MEMORANDUM DECISION**

Petitioner Raymond Richardson, by counsel Justin Collin, appeals the Circuit Court of Kanawha County's February 24, 2014, order denying his motion for judgment of acquittal and sentencing him to consecutive terms of 100 years for first degree robbery, 2-10 years for assault during the commission of a felony, and 1-15 years for possession with intent to deliver cocaine. The State, by counsel Laura Young, filed a response. On appeal, petitioner argues that the trial court committed error by denying his motion for judgment of acquittal after the evidence failed to establish that a weapon was used during the assault. Petitioner also argues that the prosecution failed to present sufficient evidence of an unlawful taking of $103. Lastly, petitioner argues that the victim's testimony is inherently incredible and that the testimony is insufficient to prove an unlawful taking beyond a reasonable doubt and that his sentence was disproportionate to the crimes committed.

This court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

During the early morning hours of August 24, 2013, petitioner attacked the sixty-one year old victim in her home. Petitioner went to the victim's home to sell her cocaine. The victim characterized her cocaine use as a "daily habit." Before the attack, petitioner, a thirty-five year old man, had sold the victim cocaine for over a year. The two frequently communicated via cell phone to arrange drug transactions. The victim's testimony at trial indicated that in the week

1

leading up to the attack, the cocaine she purchased from petitioner was sometimes cut with baking soda.

On the evening before the attack, the victim and petitioner agreed to meet at a bar in South Charleston. At the bar, the victim bought $200 worth of what she thought was powder cocaine from petitioner and returned home. The victim later testified that the cocaine product was inferior and that it was mostly baking soda. That night, petitioner repeatedly called the victim. The victim ignored his calls until around 2:00 o'clock in the morning when he called to tell her that he would make up for selling her bad cocaine. At that time, the victim told petitioner that she was going to bed. Later that same morning, petitioner called the victim and then woke her up by knocking on her door. Once inside, petitioner offered the victim $200 worth of crack cocaine. She told him that it was trash and threw it on the kitchen table. Petitioner told the victim that he needed money in order to travel out of state and "re-up," so he told the victim that she needed to pay him for the product that she destroyed.

An argument escalated at the victim's house when she demanded that petitioner leave. The victim testified that petitioner proceeded to punch the victim in the face. Petitioner continued to hit her even after she fell to the floor. The victim later testified that $103 she had earned in tips the previous night was taken by petitioner.

After petitioner left the victim's home, she called 911. The police responded to the scene but she lied to them about the drug transaction and the identity of her attacker. Later, at trial, she explained that she lied because she was embarrassed by her addiction, which she had hidden from her children and customers at a local pizza parlor, some of whom were the policemen who responded to her 911 call.

Once at the hospital, the victim eventually admitted the truth to Detective Gordon about her drug addiction and the identity of her attacker. Detective Gordon conducted a follow-up interview at the victim's home and made a video of the scene. The victim indicated that the money she kept hidden in her closet, as well as the money in her purse, was not missing. Days after the interview with Detective Gordon, the victim contacted Gordon to tell him that she realized that $103 in tip money had been taken from her ironing board on the morning of the attack. At trial, the victim testified that she heard petitioner grab the cash from her ironing board when she was on the floor after the attack.

On August 28, 2013, petitioner was arrested and detectives executed a search of his home, where they found cash and a shirt stained with a substance that looked like blood. After his arrest, petitioner was interviewed by two detectives and admitted to selling the victim drugs. Petitioner initially denied that he had been at the victim's house the morning of the attack, but later admitted to being in her home. Petitioner told the detectives at first that the victim fell, but later admitted to hitting her. Throughout the interview, petitioner insisted that he did not rob the victim.

Petitioner was tried and the jury returned a guilty verdict on all three offenses. At sentencing, the prosecution offered that the defendant could have been charged as a three-time offender under the recidivist statute, given his prior kidnapping and unlawful wounding convictions.[1] The State noted his propensity for violence and lack of employment, and further argued that a hundred-year sentence was not disproportionate, citing numerous cases. Before pronouncing sentence, Judge Bloom commented as follows:

> I too have given a great deal of consideration as to what the appropriate sentence in a circumstance like this is and have not only done some research similar to yours as to what our Supreme Courts and District Courts have considered excessive, but I've also looked back over some of the sentences that I've handed down. Just within the last couple of years a young man just in his teens was involved in a series of robberies and he was sentenced to 75 years for first degree robbery.
> And he did not have any history anywhere approaching the history that you have, Mr. Richardson.
> Mr. Richardson, I've watched you over the years and presided over the bulk of the charges that the prosecutor has mentioned and listened to the recitation of the facts of the crimes that you committed, and quite honestly I find you to be a very violent, dangerous man, and I don't say that lightly. But you are – you – the acts that you have committed have been heinous and torturous and unthinkable in the past, and that has to be a consideration in determining what the appropriate sentence in this case is.

Petitioner was sentenced to a term of one hundred years for robbery, an indeterminate term of two to ten years for assault during the commission of a felony, and an indeterminate term of one to fifteen years for possession with intent to deliver. The sentences were ordered to be served consecutively. This appeal followed.

Petitioner asserts three assignments of error on appeal. He first argues that the trial court erred by failing to instruct the jury that assault during the commission of a felony requires the use of a weapon, and by denying petitioner's motion for judgment of acquittal after the evidence failed to establish that a weapon was used during the assault. Petitioner next argues that the prosecution failed to present sufficient evidence of first degree robbery's element of unlawful taking, and that the trial court erred in denying petitioner's motions for judgment of acquittal based upon insufficient evidence of first degree robbery. Lastly, petitioner argues that the trial court erred by imposing a 100-year sentence for first degree robbery because the sentence shocks the conscience and is disproportionate to the crime.

---

[1] In 2002, petitioner pled guilty and was convicted in the Circuit Court of Kanawha County, Louis H. Bloom, J., of kidnapping and wanton endangerment and sentenced to 30 years. He appealed his sentence. The Court reversed and remanded the case with directions for a minimum sentence of 10 years in prison. *State v. Richardson*, 214 W.Va. 410, 589 S.E.2d 552 (2003).

In his first assignment of error, petitioner argues that the trial court erred by failing to instruct the jury that assault during the commission of a felony requires the use of a weapon, and by denying petitioner's motions for judgment of acquittal after the evidence failed to establish that a weapon was used during assault.

We have previously held that the crime of assault during the commission of a felony[2] essentially "acts as an enhancement statute where conduct otherwise defined as felonious is executed in such a manner that another person — a victim of the underlying felony or a witness or other bystander — is shot, cut, stabbed, or wounded in the process." *State v. Penwell*, 199 W.Va. 111, 116, 483 S.E.2d 240, 245 (1996).

The statute does not require that a weapon be used in order to commit assault during the commission of a felony. Here, the victim was clearly wounded because of the injuries she suffered as a result of being beaten by petitioner. Bruising to arms and legs, bruising to face, injured hands and a broken nose satisfy the "wound" requirement of the statute and our case law. Therefore, we find no error in the circuit court's refusal to instruct the jury that assault during the commission of a felony requires the use of a weapon, and no error in the circuit court's denial of the motion for judgment of acquittal.

In his second assignment of error, petitioner argues that the prosecution failed to present sufficient evidence of first degree robbery's element of unlawful taking, and that the trial court erred in denying petitioner's motions for judgment of acquittal based upon insufficient evidence of first degree robbery. Petitioner argues that there is not sufficient evidence to prove first degree robbery's element of an unlawful taking beyond a reasonable doubt because the victim's statements to the police and her testimony regarding the $103 that was taken from her ironing board are inconsistent.

We have previously held that "[t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). We have also held that:

---

[2] The crime of assault during the commission of a felony is set forth in W.Va. Code § 61-2-10, which provides:

> If any person in the commission of, or attempt to commit a felony, unlawfully shoot, stab, cut or wound another person, he shall be guilty of a felony and, upon conviction, shall, in the discretion of the court, either be confined in the penitentiary not less than two nor more than ten years, or be confined in jail not exceeding one year and be fined not exceeding one thousand dollars.

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." Syl. Pt. 3, *State v. Guthrie*, 194 W. Va. 657, 663, 461 S.E.2d 163, 169 (1995).

Here, the jury determined that the victim's testimony was worthy of belief despite her inconsistent statements. The victim explained why she initially lied to the police. She was embarrassed and ashamed that she had a drug problem and did not want her family and the police — some of whom were her customers — to know about the incident. In spite of her inconsistent statements to the police, the jury believed that the victim told the truth under oath. The victim was cross-examined and a reason why she would make up a story about being robbed was never developed. The victim's testimony was determined by the jury to be credible and therefore we find no error in the circuit court's finding that there was sufficient evidence of an unlawful taking in order to charge petitioner with first degree robbery.

In his third assignment of error, petitioner argues that the trial court erred by imposing a 100-year sentence for first degree robbery because the sentence shocks the conscience and is disproportionate to the crime.

In syllabus point 1 of *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997), this Court held: "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Moreover, "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982).

This case is the second time petitioner has sought to reduce a sentence imposed on him for a violent crime. In the first case, the Court reviewed petitioner's sentence of 30 years for kidnapping and wanton endangerment for forcing his long-time girlfriend to exit her apartment and walk down the street to a building owned by his grandfather, torturing her for fourteen hours. The Court held that the sentence was disproportionate and remanded with instructions to impose a minimum sentence of 10 years for kidnapping. *State v. Richardson*, 214 W.Va. 410, 589 S.E.2d 552 (2003). Notably, a dissent in the case stated: "the majority's decision to remand this case for the circuit court to impose a specific punishment of 10 years, lacks precedent in this State." *Id.*,

(Davis, J. dissenting). In 2008, the Court held that *Richardson* is a deviation from our established law. *State v. Slater*, 222 W.Va. 499, 665 S.E.2d 674 (2008).

A review of the record in this case reveals that in deciding the appropriate sentence, the lower court considered petitioner's extensive criminal history as well as his inability to keep a steady job. In addition to the kidnapping and wanton endangerment conviction discussed above, he was later convicted of unlawful wounding in 2005, after he beat and interrogated a woman. In this case, petitioner's sentence for attacking and robbing the victim in her home does not shock the conscience. Petitioner beat the victim in her home after she refused to pay him for drugs. He then stole $103 from her bedroom. Petitioner argues that 100-year sentences should be reserved for more egregious conduct than his. However, in West Virginia, first degree robbery has been recognized as a crime that involves a high probability of violence and injury to the victim, therefore, the legislature has granted trial courts broad discretion in sentencing defendants convicted of the crime. Indeed, in *State v. Ross*, 184 W. Va. 579, 402 S.E.2d 248 (1990), this Court affirmed a 100-year sentence for the crime of attempted aggravated robbery, and stated that "a disproportionality challenge should be resolved by more objective factors which include consideration of the nature of the offense, the defendant's past criminal history, and his proclivity to engage in violent criminal acts." *Ross*, 184 W. Va. At 250-51, 402 S.E.2d at 581-82. These are the precise factors relied upon by the trial court. Therefore, we find no error in the circuit court's decision to sentence petitioner to 100 years in prison.

For the foregoing reasons, we find no error in the decision of the Circuit Court of Kanawha County and affirm the February 24, 2014, order denying petitioner's motion for judgment of acquittal and sentencing him to consecutive terms of 100 years for first degree robbery, 2-10 years for assault during the commission of a felony, and 1-15 years for possession with intent to deliver cocaine.

Affirmed.

**ISSUED: September 16, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum, II
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISQUALIFIED:**
Justice Margaret L. Workman