# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Don G. Galloway,**
**Petitioner Below, Petitioner**

**vs)  No. 15-1005** (Summers County 12-C-01)

**David Ballard, Warden,**
**Mount Olive Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**September 19, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Don G. Galloway, by counsel Paul R. Cassell, appeals the Circuit Court of Mercer County's September 18, 2015, order denying his petition for writ of habeas corpus. The State, by counsel Benjamin F. Yancey III, filed a response in support of the circuit court's order. Petitioner filed a reply and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying habeas relief because his trial counsel was constitutionally ineffective, his sentence was disproportionate, and there was cumulative error.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2008, a Summers County grand jury indicted petitioner on two counts of possession with intent to deliver, one count of intimidation of and retaliation against a public officer, three counts of battery on a police officer, and one count of obstructing an officer. Petitioner, by counsel Jason Parmer, filed a motion to suppress the evidence seized by a search warrant on the grounds that the search warrant affidavit was "bare bones, conclusory, and contains false information offered by Deputy James A. Chellis in intentional or reckless disregard of the truth." Following a hearing on petitioner's motion to suppress seized evidence, the circuit court denied his motion finding that the search warrant did not contain false information and contained sufficient information to establish probable cause to search petitioner's residence. Thereafter, the circuit court permitted Mr. Parmer to withdraw as counsel, and appointed attorney Jason Grubb the following month to represent petitioner.

1

Following a jury trial, petitioner was convicted of one count of possession of a controlled substance with intent to deliver.[1] A recidivist information was filed stating that petitioner had previously been convicted of voluntary manslaughter, possession of a controlled substance with intent to deliver, and third degree sexual assault. On February 24, 2010, the circuit court sentenced petitioner to life as a habitual offender.

In September of 2010, Petitioner filed a direct appeal with this Court alleging that Deputy Chellis did not present sufficient evidence within the affidavit or the search warrant itself to establish probable cause thereby making the search of defendant's home illegal and requiring the suppression of all evidence seized as the search violated the Fourth Amendment to the United States Constitution and Article III, Section 6, of the West Virginia Constitution. By ordered entered March 11, 2011, this Court affirmed petitioner's conviction. *See State v. Galloway*, No. 101185 (W.Va. Mar. 11, 2011)(memorandum decision).[2]

Several years later, petitioner, pro se, filed a motion for a new trial based upon newly-discovered evidence that Juror Andy Ward withheld personal knowledge of the case and committed misconduct by withholding the fact that he had a prior conflict with petitioner following an incident in which Juror Ward and petitioner were using drugs. Ultimately, the circuit court denied petitioner's motion. In 2014, petitioner filed a petition for writ of habeas corpus alleging that he received ineffective assistance of counsel, received a disproportionate sentence, and there was cumulative error. Following an omnibus evidentiary hearing, the circuit court entered an order denying petitioner's petition for writ of habeas corpus. This appeal follows.

This Court reviews a circuit court order denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner argues that the circuit court erred in denying habeas relief based on his claim that his trial counsel was constitutionally ineffective, his sentence was disproportionate, and cumulative error.

---

[1]Prior to trial, Mr. Grubb filed a motion to sever the possession with intent to deliver charges from the remaining counts in the indictment. Ultimately, the circuit court granted petitioner's motion to sever only the charge of intimidation/retaliation against a public officer.

[2]This Court refused petitioner's petition for rehearing. Thereafter, the Supreme Court of the United States denied petitioner's petition for a writ of certiorari.

Our review of the record supports the circuit court's decision to deny petitioner post-conviction habeas corpus relief based on errors alleged in this appeal, which were also argued below. Indeed, the circuit court's order includes well-reasoned findings and conclusions as to the assignment of error raised on appeal. Furthermore, petitioner argues that cumulative error in the proceedings below violated his right to due process of law. *See* Syl. Pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972) (holding that "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error."). In light of our rulings on petitioner's other grounds for relief, petitioner's final assignment of error must fail. We have not found numerous errors in the record before us. As such, we reject petitioner's argument under the cumulative error doctrine. Given our conclusion that the circuit court's order and the record before us reflect no clear error or abuse of discretion, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignment of error raised herein and direct the Clerk to attach a copy of the circuit court's September 18, 2015, "Order Denying Writ of Habeas Corpus" to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:  September 19, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Justice Brent D. Benjamin

3

IN THE CIRCUIT COURT OF SUMMERS COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL.,
DON G. GALLOWAY,
    Petitioner,

v.                         CIVIL ACTION NO.: 12-C-01

DAVID BALLARD, WARDEN,
MOUNT OLIVE CORRECTIONAL CENTER,
    Respondent.

RECEIVED

SEP 2 1 2015

CASSELL & CREWE PC

## ORDER DENYING WRIT OF HABEAS CORPUS

On a prior day, the Petitioner, Don G. Galloway, filed a *pro se* petition for a Writ of *Habeas Corpus* under West Virginia Code §53-4A-1, and supporting documents with the Clerk of this Court. On May 1, 2014, the Petitioner filed an amended Petition for a Writ of *Habeas Corpus*.

The Court conducted an omnibus hearing on this Petition on August 14, 2015, with the Petitioner appearing in person and by counsel, Paul Cassell, Esq., and the Respondent appeared by the Prosecuting Attorney of Summers County, Amy Mann, and the Assistant Prosecuting Attorney of Summers County, Kristin R. Cook. After having considered the petition, the supporting documents, and the arguments of counsel, and having consulted the appropriate legal authorities, the Court DENIES the Petition for a Writ of Habeas Corpus.

### FACTUAL AND PROCEDURAL BACKGROUND

A. Pretrial

The Petitioner was indicted on July 15, 2008, for two counts of possession of a controlled substance with intent to distribute, one count of intimidation of and retaliation against public officers, three counts of battery on a police officer, and one count of obstructing an officer. The underlying charges arose from a search of the Petitioner's residence at 140 Railroad Avenue, Hinton, WV. The

1

Petitioner was found in a bedroom with an individual named Stephanie Ratliff. When arrested, the officers found a bottle of Oxycontin in the Defendant's hand, and an unlabeled bottle of Xanax in a drawer in the bedroom, and a large sum of money. Further, the Defendant was involved in an altercation with the police, which served as the basis for the charges of intimidation of and retaliation against a public officer, battery on a police officer, and obstructing.

Throughout the course of the proceedings, the Petitioner was unsatisfied with his counsel and requested new counsel at multiples points during the case. For a portion of his pretrial litigation, the Petitioner was represented by Jason D. Parmer. Mr. Parmer identified possible issues with the search warrant and made a motion to suppress the evidence seized from the search. On January 30, 2009, the Court held a hearing on the motion to suppress and Mr. Parmer identified inconsistencies and argued that the confidential informants were unreliable, rendering the affidavit insufficient to support issuance of a search warrant. Ultimately, the Court ruled against the Petitioner, and held that the affidavit was sufficient to support issuance of the search warrant.

Pursuant to a request by the Petitioner for the appointment of a different attorney, the Court released Jason Parmer as counsel, and appointed Mr. Jason Grubb as counsel of record. Mr. Grubb represented the Petitioner from this point on.

At the time Mr. Grubb was appointed, most of the pretrial motions had been heard and decided. Mr. Grubb testified at the omnibus hearing that he reviewed the work performed up to his appointment, determined that it was sound work, and did not see any strategy in asking the Court to reconsider motions which had already been ruled on. Specifically with regard to the motion to exclude the search, Mr. Grubb found that the Court had made up its mind on the matter, and accepted that the evidence would be admitted.

2

Moving forward with the case as he received it, Mr. Grubb determined that the best strategy was to attack the credibility of the search warrant and the seizure of the evidence, and to defend the case under that strategy. Mr. Grubb stated that he believed that it was a very effective strategy, and thought it worked well.

## B. Trial

The first issue complained of at trial occurred during *voir dire*. The Court asked the jury if anyone knew the Petitioner, then Defendant, though any social or business contact. Juror Andy Ward did not indicate that he knew the Petitioner in any way. There is some inconsistency between the Petitioner and his trial counsel as to what happened next. The Petitioner asserts in his pleadings that he told his attorney, he might have known Juror Ward. Mr. Grubb, trial counsel, testified at the omnibus hearing that the Petitioner never told him that he knew Juror Ward. Defendant failed to testify or offer any evidence to refute Mr. Grubb's testimony during the omnibus hearing.

Petitioner's counsel pursued a trial strategy which highlighted the inconsistencies in the search warrant to undermine the State's case, and asserted that the Xanax seized as a result of the search belonged to Stephanie Ratliff. Ms. Ratliff was called as a witness by the Petitioner, and she testified that the pills belonged to her. On cross-examination, Ms. Ratliff admitted that she did not remove the label from the seized bottle, and that she never removed the Xanax bottle from her purse and placed it in the drawer. Trial Counsel did not enter Ms. Ratliff's prescription into evidence. At the omnibus hearing, trial counsel testified that he diligently attempted to acquire the prescription, but ultimately was unable to do so.

During trial, the Defendant waived his Fifth Amendment right to remain silent and testified that he removed the Xanax from Ms. Ratliff's purse and he intended to share it between a friend and himself, but not to sell it. He further testified that the money seized was not earned through drug

3

activity, but rather through work income, gambling, and a tax return. On cross-examination, the Prosecution asked the Petitioner whether he could provide his tax return or any other paperwork which would substantiate his claims.

The final issue in this case involves the recidivist charge. In 2004 the Petitioner was convicted of a manslaughter committed in 1988. Between 1988 and 2004, the Petitioner committed and was convicted of two additional charges: third degree sexual assault in 1995, and possession of a controlled substance, with intent to distribute, in 2000.

In connection with this case, the Petitioner's counsel argued that the Petitioner's 2004 manslaughter conviction is inapplicable under the recidivism statute, because although it was the Petitioner's last conviction, the Petitioner had not been convicted of manslaughter before he had committed and been convicted of the other two charges. Ultimately, the Court rejected that theory and permitted all three prior convictions to be used in the recidivism charge.

In the most recent case, Criminal Case No. 08-F-35, Petitioner was found guilty of one count of possession of a controlled substance, Xanax, with the intent to distribute. After the conviction, the State filed an information charging the Petitioner with being a recidivist, pursuant to WVC § 61-11-18. The Petitioner was adjudicated to be a recidivist, and sentenced to life imprisonment. This matter is now before the Court on the Petitioner's Petition for *Habeas Corpus*.

## LAW

### A. *Habeas Corpus*

Any person convicted of a crime and incarcerated who contends that such denial infringes his rights as to render the conviction or sentence void under the Constitution may file a petition for the writ of *habeas corpus* seeking for release from such illegal confinement, or correction of sentence. W. Va. Code § 53-4A-1 *et seq.* A writ of *habeas corpus* is available if and only if the contention has

4

not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence or in any other proceeding which the petitioner has instituted to secure relief from such conviction or sentence. *Id.* Where a petitioner alleges but fails to prove he is being illegally held, relief should be denied. Syl. pt. 1, *Echard v. Holland*, 177 W. Va. 138, 351 S.E.2d 51 (1996).

## B. Ineffective Assistance of Counsel

Both the United States Constitution and the West Virginia Constitution guarantee the Right to Counsel. U.S. Const. amend. VI; W. Va. Const. art. III, § 14. West Virginia applies the two-prong test for ineffective assistance of counsel established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Syl. pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). First, counsel's performance must be deficient under an objective standard of reasonableness; and second, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland.* A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

## C. Cruel and Unusual Punishment

Both the state and federal constitutions prohibit sentences which are disproportionate to the crime committed. *See State v. Richardson*, 214 W. Va. 410, 413, 589 S.E.2d 552, 555 (2003). The Court applies a two stage analysis to determine whether a sentence is disproportionate: a subjective test and a balancing test. First, under the subjective test, "[p]unishment may be constitutionally impermissible . . . if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." Syl. pt. 5 *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983). If the punishment is not disproportionate under the subjective test, the court must consider the balancing test. Under the balancing test, the Court must weigh various

5

factors including the age of the defendant, prior record of the defendant, rehabilitative potential (including post arrest conduct, age and maturity), statements of the victim, evaluations made in anticipation of sentencing, and remorse of the defendant. *Id.* at 271-72, 856; *see also* syl. pt. 6, *State v. Booth*, 224 W. Va. 307, 685 S.E.2d 701 (2009). When reviewing a life recidivist sentence for proportionality, the sentence must be evaluated under two viewpoints:

> first, the nature of the third offense and, second, the nature of the other convictions that support the recidivist sentence . . . . **We do not believe that the sole emphasis can be placed on the character of the final felony which triggers the life recidivist sentence** since a recidivist statute is also designed to enhance the penalty for persons with repeated felony convictions, i.e., the habitual offenders. However, for the purposes of proportionality, the third felony is entitled to more scrutiny than the preceding felony convictions since it provides the ultimate nexus to the sentence."

*Warnstreet v. Bordenkircher*, 166 W. Va. 523, 533-34, 276 S.E.2d 205, 212 (1981) (emphasis added).

### D. Cumulative Error

When the Court finds harmless error, "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United State v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990); *see also United States v. Martinez*, 277 F.3d 517, 532 (4th Cir. 2002). The West Virginia Supreme Court of Appeals has similarly held that "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." *Syl. Pt. 5, State v. Smith*, 156 W. Va. 385, 193 S.E.2d 550 (1972).

### ANALYSIS

6

In his Petition, the Petitioner has four essential claims.: ineffective assistance of counsel, cruel and unusual punishment, cumulative error, and all additional *Losh* list claims.

## A. The Petitioner's representation does not evidence ineffective assistance of counsel.

Within his ineffective assistance counsel claim, the Petitioner asserts that his representation was deficient for five reasons: first, counsel failed to properly investigate and undermine the inadequate search warrant; second, counsel failed to properly address the Xanax charge; third, counsel ineffectively exercised *voir dire* and thereby denied the Petitioner his Due Process rights with regard to Juror Ward; fourth, counsel improperly permitted the prosecutor to shift the burden of proof; and fifth, counsel was ineffective in explaining the effect of the state's promise not to enhance the 2004 voluntary manslaughter charge.

### 1. Counsel properly investigated and attempted to undermine the search warrant.

The Petitioner asserts that counsel's performance was deficient because it failed to adequately investigate and exploit the inconsistencies of the search warrant. A review of the record indicates that the Petitioner had multiple counsel substitutions leading up to trial. Before the appointment of Mr. Grubb, his trial attorney, the Petitioner was represented by Mr. Jason D. Parmer. Mr. Parmer investigated the case and identified potential issues regarding the search warrant. He prepared and filed a Motion to Suppress Seized Evidence. That motion was denied in the Court's Order Denying Motion to Suppress Seized Evidence.

Mr. Grubb testified at the omnibus hearing that when he took over the case, he did not see any merit in re-litigating those issues already settled, including the motion to suppress. Rather than simply dismiss the perceived inconsistences however, he focused on them as a trial strategy to impeach the credibility of law enforcement.

7

Based on Mr. Grubb actions, it is clear that he considered the inconsistencies underlying the execution of the search warrant and pursued an effective and cohesive trial strategy. Under the first prong of *Strickland*, counsel's performance must be objectively unreasonable. The Court cannot find that it was objectively unreasonable to decide not to re-litigate settled issues, and to instead attack the inconsistencies as a trial strategy. The Court therefore holds that the Defendant did not receive an ineffective assistance of counsel for failure to re-litigate the Motion to Suppress Seized Evidence.

### 2. Counsel effectively addressed the Xanax charge.

The Petitioner argues that he received ineffective assistance of counsel because Mr. Grubb did not produce Ms. Ratliff's prescription for the Xanax which was the subject of the Petitioner's possession with intent to distribute charge. At trial, the Petitioner's argument was that Ms. Ratliff was in possession of the Xanax, because it was her prescription. However, the evidence showed that the Xanax was found in a drawer in the bedroom and not in Ms. Ratliff's purse, the label had been removed, and she had neither removed the medication from her purse, nor removed the label. On direct examination at trial, the Defendant testified that he took the medication not to sell, but rather to share between himself and a friend. At the omnibus hearing, Mr. Grubb testified that he made diligent efforts to contact Ms. Ratliff and track down her prescription, but was unsuccessful. Mr. Grubb did however put Ms. Ratliff on the stand at trial to take direct testimony as to the ownership of the Xanax.

Under the first prong of *Strickland*, counsel's performance must be deficient under an objective standard of reasonableness to constitute ineffective assistance. In the case presently at bar, counsel made diligent efforts to track down the prescription, but was unsuccessful. Although he could not produce the prescription, he did produce the witness who directly testified as to ownership of the medication. Although it may have been preferable to have the prescription, the failure to

8

acquire it after due diligence is not deficient representation under an objective standard of reasonableness.

If the failure to produce the prescription could be considered objectively unreasonable, the Defendant's argument would nonetheless fail under the second prong of *Strickland*. Ms. Ratliff, testified that she did not remove the label from the prescription, nor did she remove it from her purse and place it in the drawer. The Petitioner testified that he did take the medication from Ms.. Ratliff and intended to share it between him and his friend. There is clear evidence of possession by the Petitioner, regardless of whether the medication was properly proscribed to Ms. Ratliff. Therefore, the Court holds that the failure to produce Ms. Ratliff's prescription does not constitute ineffective assistance of counsel.

### 3. Counsel was not ineffective during *voir dire* and the Petitioner's due process rights were not violated.

The Petitioner argues his counsel was ineffective because he failed to make further inquiry of Juror Andy Ward as to his past relationships with the Petitioner, and because he failed to have Juror Ward stricken for cause. The Petitioner asserts that, during *voir dire*, he told his counsel that he might know Juror Ward. His trial counsel, Mr. Grubb denied that the Petitioner told him he might know Juror Ward.

In support of the Petitioner's argument, he has submitted a letter from his friend, Dewey Mann, stating that Juror Ward was the same Mr. Ward with whom they had previously engaged in drug activity. In this same letter, Mr. Mann recalls a conversation where the Petitioner told him that he thought it was a different Mr. Ward because Juror Ward appeared different from the man he remembered. At the omnibus hearing, the Prosecutor represented that there are two men in the jurisdiction with the name Andy Ward.

9

Under the *Strickland* standard, the Petitioner must first prove that his counsel's performance fell below an objective standard of reasonableness. The Petitioner claims that he told his counsel at *voir dire* that he might know Juror Ward, but does not assert that he was sure, or even confident of that fact. Even based on the representations of his companion, Mr. Mann, the Petitioner believed Juror Ward to be a different person that the Mr. Ward with whom he engaged in drug activity. Petitioner failed to offer any evidence on this point at the omnibus hearing.

Based on the evidence, the Court finds that the Petitioner did not state to his counsel that he knew Juror Ward. Therefore, the Court holds that counsel's performance was not objectively unreasonable under the first prong of *Strickland* because he was under no duty to make further inquiry of Juror Ward or strike him for cause where he did not know there was a potential relationship between the Petitioner and the Juror.

### 4. Counsel did not impermissibly allow the State to shift the burden of proof because the Defendant opened the door to questions about a tax return.

The Petitioner argues that counsel impermissibly permitted the prosecutor to shift the burden to the Defendant to prove his innocence in a criminal case. The law is clear that the Defendant is presumed innocent until proven guilty. Under the Fifth Amendment, the prosecution cannot compel the Defendant to give up his right to remain silent and take the stand. When the Defendant chooses to take the stand, however, he is subject to cross-examination on the subjects he raises.

In this case, the Petitioner waived his right as a criminal Defendant to remain silent. He took the stand and testified on direct examination that the currency seized during the search was not received from the sale of drugs, but rather from his earnings, gambling wins, and tax return. This currency was the basis for the possession with intent to distribute charge. On cross examination, the Prosecution asked the Defendant to produce pay stubs and his tax return. The Prosecution further

10

inquired about the size of the bills seized from the Petitioner, and initiated a line of questioning to suggest that the bills were too large to be earned during gambling.

This line of questioning is directly related to Petitioner's testimony on direct examination. When the Petitioner testified that the seized money was not earned through drug sales but rather through legitimate means, he opened the door to questions to impeach the Defendant's testimony.

The only remaining argument is that counsel was ineffective by asking those questions, and thereby opening the door to the subjects on cross examination. The Court finds that Petitioner cannot meet its burden under either prong of *Strickland*. First, counsel's performance was not deficient under an objective standard of reasonableness because it is a sound trial strategy to counter the Prosecution's assertion that the money in the Defendant' possession was earned through drug sales. Second, there is not a reasonable probability that the outcome of the trial would be different because without the Petitioner's testimony, because there would be no way to counter the Prosecution's assertion that money was actually the product of drug sales.

The Court holds that allowing the Petitioner to testify as to the source of the money seized was not an ineffective assistance of counsel, and counsel did not impermissibly allow the Prosecution to shift the burden of proof because the Petitioner's assertions about the Petitioner's pay stubs and tax return.

### 5. Counsel was not ineffective in explaining the effect of the state's promise not to enhance the 2004 voluntary manslaughter charge.

In his Petition, the Petitioner argues that he was ineffectively represented by counsel, because the effect of the manslaughter plea was not properly explained to him. His argument appears to be twofold: first, his counsel from the 2004 manslaughter conviction improperly explained the effect of his taking a plea; and second, Mr. Gubb failed to properly explain the effect of his manslaughter plea, as the case was moving forward to trial.

11

As to the Petitioner's first claim, the Court rejects his argument because his representation during his 2004 manslaughter conviction is not a subject of the present proceedings.

As to the Petitioner's second claim, the Court finds that counsel was not ineffective in explaining the effect of his previous 2004 manslaughter conviction. The recidivist enhancement is a result of the Petitioner's past crimes. Counsel had no control over the past convictions of the Petitioner, and cannot be held accountable for them. The Petitioner's only argument appears to be that Mr. Grubb was confused about how the enhancement applied to the Petitioner's case, and perhaps that would have influenced the Petitioner's decision to take a plea. In support of his argument, the Petitioner points to the record where Mr. Grubb argued that the 2004 manslaughter conviction was inapplicable and he made multiple statements such as, "I'm a little mixed up this morning," and "discombobulated this morning," in support of his argument that Mr. Grubb didn't know what he was doing. Transcript Pretrial Hearing, February 23, 2010, page 7.

Based upon the Court's review of the record, counsel demonstrated an adequate understanding of the enhancement statute. At most, the record demonstrates that Mr. Grubb was a bit mixed up, but in no way do his statements extend to a showing that Mr. Grubb was unclear on the statute. Ultimately, Mr. Grubb had no control over the Petitioner's prior convictions, and his attempt to defeat the recidivism charge argued on February 23, 2010, was nothing more than zealously advocating for his client. Because his argument did not carry the day does not create an inference that he misinformed his client, it is merely proof that the law was not on his client's side.

**B. The Petitioner's sentence does not constitute cruel and unusual punishment.**

The Petitioner argues that his sentence of life imprisonment with the possibility of parole after 15 years is disproportionate under both stages of the analysis set forth in *Cooper*. Simply put, the Petitioner argues that a life sentence for distributing Xanax shocks the conscience at the first

12

stage, and the non-violent nature of the offense and acquittal of other charges militate in favor of not imposing the life sentence. In his argument, the Petitioner places particular weight on *Wanstreet* and its proposition that the third felony is entitled to the most scrutiny because it provides the ultimate nexus for the sentence.

The State contends that Petitioner is an ideal candidate for the recidivist life sentence. The State concedes that the ultimate nexus for the life sentence was a distribution of Xanax conviction; however, that conviction was only the most recent in what has proven to be a significant criminal history. The imposition of a recidivist life sentence does not shock the conscience, because of the repeated criminal conduct of the Petitioner.

Although the Court notes that the third felony is entitled more scrutiny than the prior convictions under *Wanstreet*, the Court is inclined to agree with the State. Under the first stage of *Cooper*, the Court finds that the Petitioner had a substantial criminal history prior to this conviction, that there were adequate grounds to impose a recidivist life sentence, and the sentence is therefore subjectively reasonable. Although a life sentence for a single Xanax distribution would be clearly be disproportionate, this is not the case presently at bar.

Under the second stage of *Cooper*, the Court finds that weighing the factors set forth in *Cooper* gravitate to finding the life sentence proportional to the recidivist conduct of the Petitioner. Although the distribution conviction is in and of itself non-violent, the Petitioner has proven himself capable of great violence through his prior convictions, and proven an inability to conform to the laws. As stated in *Wanstreet*, the emphasis is not solely on the final conviction.

**C. The Petitioner did not suffer from cumulative error.**

13

Plainly stated, the Petitioner argues that, even though counsel's conduct did not reach the level of reversible error, it nonetheless constituted multiple acts of harmless error. The cumulative effect of such harmless errors merits setting aside his conviction and granting him a new trial.

The Court is inclined to agree with the Respondent that no error occurred, and any such perceived error would not have amounted to cumulative error meriting setting the conviction aside, but rather, harmless error.

## D. The Petitioner's remaining *Losh* List claims are denied.

The Petitioner has raised a significant number of claims in his *Losh* checklist which were neither argued at the omnibus hearing, nor raised in the briefs. Those claims are: prejudicial pretrial publicity, mental competency at time of trial, incapacity to stand trial due to drug usage, suppression of helpful evidence by prosecutor, State's knowing use of perjured testimony, unfulfilled plea bargains, irregularities in arrest, no preliminary hearing, refusal of continuance, constitutional errors in evidentiary rulings, claims of prejudicial statements by prosecutor, severer sentence than expected, excessive sentence, and mistaken advice of counsel as to parole or probation eligibility.

Upon its review of the Petition, the omnibus hearing, and the case file of the criminal case, the Court cannot find any merit in the remaining *Losh* list claims asserted by the Defendant. In a *habeas* action, the Petitioner bears the burden of proving he is being illegally held. Therefore, the Petitioners remaining claims raised on the *Losh* list are denied.

## CONCLUSION

A Defendant is entitled to competent representation, not necessarily the best representation available. In the case presently at bar, the Petitioner received professional and competent representation, and none of the five complained of errors alleging ineffective assistance of counsel meet the first prong of the *Strickland* test. The life sentence and recidivism charge based on a single

14

conviction of Xanax distribution, if viewed in isolation, may appear disproportionate, but when considered in connection with the Defendant's past criminal record, it paints the picture of a habitual offender and a clear candidate for the life sentence. Because the Court finds no error in trial counsel's representation, the Court holds that the Petitioner's case did not suffer from cumulative error. Finally, the Court holds that the Petitioner has not met his burden of proving that he is being illegally held, and so denies the remainder of the Petitioner's claims raised in the *Losh* list.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus is **DENIED**.

2. This is a final order and the Circuit Clerk is directed to remove this matter from the active docket of the Court.

3. The Circuit Clerk shall send a certified copy of this order to the Prosecuting Attorney of Summers County; the Petitioner, Don G. Galloway, and counsel for the Petitioner, Paul R. Cassell, Esq.

Dated: August 28, 2015.

_____
**ROBERT A. IRONS, CIRCUIT JUDGE**

A TRUE COPY:
ATTEST:
Linda S. Brumit
CLERK, CIRCUIT COURT
SUMMERS CO., WV

15